LAW OFFICE OF JOHNSON & JOHNSON
PETER JOHNSON 165523
319 Railroad Ave., Ste. 201
Pittsburg, CA 94565
(925) 432-7447
(925) 473.0512
jjlaw2@earthlink.net

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| TRACY WATS0N, RENEE STALKER, OLIVIA STALKER, SHAFER WATSON, RILEY WATSON,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>COUNTY OF SANTA CLARA, COUNTY OF SANTA CLARA DEPARTMENT OF FAMILY AND CHILDREN SERVICES; COUNTY OF SANTA CLARA DEPARTMENT OF COUNTY COUNSEL; COUNTY OF SANTA CLARA DISTRICT ATTORNEYS OFFICE; SANTA CLARA VALLEY MEDICAL CENTER; EVERGREEN SCHOOL DISTRICT; CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT; NORMA SPARKS, YAZMINA LETONA; SHARON BURGAN; JEWELS RAMIREZ; VU TRAN; ANN MILLER RAVEL, RIMA SINGH; AARON WEST; GEORGE KENNEDY; CLIFTON BLACK; ROSE REAL; ROBERT PRUITT; CHERYL HARMS; CLAUDIA BLODGETT; GARY KISHIMOTO; JOELLA MOLLOY; JOHN HAMILTON, ANITA NOBLE, JANET KAHLE, MARY RITTER, DAVID KEARNS, RAJUL KAZI;ROB DAVIS; WILLIAM HOYT; CRAIG BLANK;<br><br>                    Defendants. | Case No. C06-4029 RMW<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br>AND DEMAND FOR JURY |

## I. JURISDICTION and VENUE

1. This action is brought pursuant to Title 42 U.S.C. section 1983 and section 1988; Title II ADA 42 USCS 12131 et seq; 504 Rehabilitation Act 29 USCS 794; Violation of Due Process under the 14th Amendment of the U.S. Constitution; Violation of Unlawful Search and Seizure under the 4th amendment of the U.S. Constitution; Violation of the Right to Counsel under the 6th amendment of the U.S. Constitution; Because federal claims are being made this court has jurisdiction. State claims are presented and are proper under the Courts pendente claim statute.

2. This complaint is being filed in the San Jose Division for the United States District Court, Northern District of California due to the events occurring in Santa Clara County and the parties herein located in Santa Clara County, wherein the San Jose Division is located.

## II. PARTIES

3. Defendant, Yazmina Letona, is sued in her individual capacity and her official capacity as an employee for the County of Santa Clara. Letona is a social worker employed by the Santa Clara County Department of Family and Children Services;

4. Defendant, Norma Sparks, is sued in her individual and her official capacity as an employee of the County of Santa Clara. Sparks is the Director of the Santa Clara County Family and Children Services;

5. Defendant, Sharon Burgan is sued in her individual capacity and her official capacity as an employee for the County of Santa Clara. Burgan is a social

worker employed by the Santa Clara County Department of Family and Children Services;

6. Defendant, Jewels Ramirez, is sued in his individual capacity and his official capacity as an employee for the County of Santa Clara.  Ramirez is a social worker employed by the Santa Clara County Department of Family and Children Services;

7. Defendant, Vu Tran, is sued in his individual capacity and his official capacity as an employee for the County of Santa Clara.  Tran is a social worker employed by the Santa Clara County Department of Family and Children Services;

8. Defendant, Ann Miller Ravel, is the County Counsel for the County of Santa Clara.  Miller Ravel is sued in her individual and official capacity;

9. Defendant, Rima Singh, is an attorney employed by the Department of County Counsel for the County of Santa Clara.  Singh is sued in her individual and official capacity;

10. Defendant Aaron West, is an attorney employed by the District Attorney's Office for the County of Santa Clara.  West is sued in her individual and official capacity;

11. Defendant George Kennedy is the District Attorney for the County of Santa Clara.  Kennedy is sued in his individual and official capacity.

12. Defendant Clifton Black is the superintendent for the Evergreen School District located in Santa Clara County.  Black is sued in his individual and official capacity;

13. Defendant Rose Real is employed by the Evergreen School District, a Santa Clara County School District.  Real is sued in her individual and official capacity.

14. Defendant Robert Pruitt is employed by the Evergreen School District, a Santa Clara County School District.  Pruitt is sued in her individual and official capacity.

15. Defendant Claudia Blodgett is employed by the Evergreen School District, a Santa Clara County School District.  Blodgett is sued in her individual and official capacity.

16. Defendant Gary Kishimoto is employed by the Evergreen School District, a Santa Clara County School District.  Kishimoto is sued in his individual and official capacity.

17. Defendant Joella Molloy is employed by the Evergreen School District, a Santa Clara County School District.  Molloy is sued in her individual and official capacity.

18. Defendant John Hamilton is employed by the Santa Clara Valley Medical Center, a Santa Clara County Hospital.  Hamilton is the laboratory director for Valley Medical Center.  Hamilton is sued in his individual and official capacity.

19. Defendant Anita Noble is employed by the Santa Clara Valley Medical Center, a Santa Clara County Hospital.  Noble is sued in her individual and official capacity.

20. Defendant Janet Kahle is employed by the Santa Clara Valley Medical Center, a Santa Clara County Hospital.  Kahle is sued in her individual and official capacity.

21. Defendant Mary Ritter, is employed by the Santa Clara Valley Medical Center, a Santa Clara County Hospital. Ritter is a physician's assistant practicing under the license of Dr. David Kerns, in the Center for Child Protection, a Valley Medical Center department, and is sued in her individual and official capacity.

22. Defendant David Kearns, is employed by the Santa Clara Valley Medical Center, a Santa Clara County Hospital. Kearns practices in the Center for Child Protection at the Valley Medical Center and is sued in his individual and official capacity.

23. Defendant Rajul Kazi, is employed by the Santa Clara Valley Medical Center, a Santa Clara County Hospital. Kazi is sued in his individual and official capacity.

24. Defendant Rob Davis is the Chief of Police for the City of San Jose. Davis is sued in his individual and official capacity;

25. Defendant William Hoyt is employed by the San Jose Police Department. Hoyt is sued in his individual and official capacity;

26. Defendant Craig Blank is employed by the San Jose Police Department. Blank is sued in his individual and official capacity.

27. Dr. Elizabeth Mailhot, is employed as a department head in the Valley Medical Center Laboratory, at the Santa Clara Valley Medical Center, a Santa Clara County Hospital.

28. Linda Castaldi is employed as a supervisor/social worker with the Department of Family and Children Services in the County of Santa Clara.

29. Will Lightbourne is employed as director of the Social Services Agency for the County of Santa Clara.

30. Defendant Cheryl Harms is employed by the Evergreen School District, a Santa Clara County School District.  Harms is sued in her individual and official capacity.-

31. Renee Stalker is an individual over the age of 18.  Stalker is the mother of minor plaintiffs Olivia Stalker, Shafer Watson and Riley Watson. Stalker is the spouse of plaintiff Tracy Watson.  At all times relevant herein, Stalker resided in Santa Clara County.

32. Tracy Watson is an individual over the age of 18.  Watson is the father of the minor plaintiffs herein and the spouse of plaintiff, Renee Stalker.  At all times relevant herein, Waston resided in Santa Clara County.

33. Riley Watson is a 2 year old male child;

34. Shafer Watson is a 4 year old male child suffers from Severe Autism.

35. Olivia Stalker is a 9 year old female child.  Olivia Stalker is qualified as "disabled" as it is defined under federal and California state law.  Olivia Stalker is qualified as "exceptional needs" as it is defined under California state law.  Olivia suffers from Attention Deficit Hyperactivity Disorder, Terrets Syndrome, Sensory Integration Disorder, Processing Deficit, she has deficits in communications skills, cognitive skills, chronology, and memory impairment.

36. Defendant County of Santa Clara is a public entity incorporated under the laws of the State of California;

37. Defendant City of San Jose is a public entity incorporated under the laws of the State of California;

38. Defendant Department of Family and Children Services, Santa Clara Valley Medical Center, Santa Clara County District Attorney's Office, Office of County Counsel, Evergreen School District are all divisions of Santa Clara County.

39. Defendant San Jose Police Department is a division of the City of San Jose.

40. Plaintiff has made timely claims under the California Tort Claim act to each of the public entities herein regarding such public entity liability and such public employee liability alleged herein.  The Claims have all been denied.  Plaintiff hereby files this suit within the statutory time following rejection of said claims.  Additionally with regard to health care providers named herein, all such persons or entities have been provided notice of intent to sue per the tort claim referenced above, to the extent that conduct they engaged in related this matter, if any, is covered under the provisions of MICRA.

41. Pam Stalker is the aunt of the minor children, the foster parent to the children during the dependency proceedings and to be appointed as guardian ad litem herein, with leave of court.

### III. GENERAL ALLEGATIONS

42. During the 2004 and 2005 school years, staff from the Evergreen School district systematically abused Olivia, a Special Needs child in their care related to providing her with special education services.

43. On or about May 26, 2005, in retaliation for Watson and Stalker making a number of complaints regarding the prior abuse of Olivia and further in retaliation for their making substantial demands for compliance with legal obligations related to their child's special education needs, RSP teacher Rose Real filed a false allegation of

sexual abuse claim to the Santa Clara County Department of Family and Child Services, (formerly known as "Child Protective Services") (hereinafter "DFCS");

44. On or about June 7, 2005 plaintiff's first became aware of the complaint in paragraph 43 above.

45. On June 7, 2005 DFCS employee Ramirez called Watson at 9 pm, and notified Watson that they were investigating allegations related to sexual abuse of Olivia.

46. On June 7 and thereafter, Stalker and Watson attempted to set up a meeting with DFCS through their attorney.  Ramirez made no effort to interview the parents or the children.  It was later learned by Plaintiffs that despite no evidence or investigation, DFCS worker Vu Tran cross-reported the case on or about June 24, 2005 to the San Jose Police Department;

47. On June 29, 2005, 33 days after the initial CPS report, 6 to 8 San Jose Police officers entered the Stalker-Watson home without a warrant, under the guise of a "welfare check.

48. At the direction of supervising officer Sgt. Craig Blank, San Jose Police Det. William Hoyt and other officers did place Shafer Watson, an autistic child, and Riley Watson, a breast-feeding infant, into car seats the police brought, and forcibly removed them from their home.

49. On June 30, Olivia Stalker was taken into "protective custody" after an interrogation conducted by Det. Hoyt (and monitored by County Counsel) in which no complaint of abuse was made, and no evidence for any charges were presented.

50. On July 1, mother Renee Stalker and her attorney met with Social Services supervisor Sharon Burgan and lead county counsel Mike Clark under the guise of an interview, only to be told that the petition had already been filed.

51. After 12 days in "emergency" foster care, DFCS ordered Santa Clara Valley Medical Center to conduct a SART exam on Olivia Stalker on July 11, despite no evidence of physical trauma, and no complaint of abuse from the child.

52. Physician's Assistant Mary Ritter allegedly conducted the SART examination, however failed to create a crime kit as required.

53. On or about July 13, 2005, the negligence of Janet Kahle, Mary Ritter and others at Valley Medical Center led to a bogus, false positive result for Chlamydia Trachomatis (an STD) reported by the lab at Valley Medical Center, and that result was later communicated by Mary Ritter to both Det. Hoyt and DFCS case worker Yazmina Letona.

54. On or about July 15, 2005, Det. Hoyt did cause a warrant for collection of bodily fluids with the statement "and if necessary with the use of reasonable force" to be issued against both parents by Judge Jerome Brock.

55. On July 15, 2005, unidentified SJPD plainclothes officers confronted Renee Stalker at the San Jose Children's Shelter without the above warrant, and falsely arrested her after refusing to state the purpose of the detainment.

56. On July 15, 2005, Det. Hoyt failed to identify himself to Renee Stalker as she was chained to steel table, and proceeded to interrogate her without reading her Miranda rights, nor allowing her access to an attorney.

57. On July 15, 2005, Sgt. Craig Blank, with other unidentified SJPD officers, approached the Stalker-Watson residence with guns drawn, ransacked their two vehicles, and smashed in their front door while executing the "samples" warrant described above.

58. On July 15, 2005, Both Tracy Watson and Renee Stalker were forced to submit bodily fluid samples under armed duress at Santa Clara County's Valley Medical Center.

59. Without regard to the family's culture, or the requirements of two special needs children plus a breast-feeding infant, the Stalker-Watson children were isolated for over 6 months in a Spanish-speaking only satellite foster home, despite the availability of placement with family members or more reasonable placement

60. On July 22, 2005, Dr. David Kearns submitted an unsolicited letter to the Dependency Court falsely stating that a positive lab result on Olivia was "evidence of recent infection". Dr. Kearns was not qualified to make such a statement nor did he have sufficient information to make such a statement. Dr. Kearns made this statement despite knowing that he was not qualified to give such a statement and despite knowing that he did not have sufficient information for making such a statement and further despite the knowledge that it would cause harm to plaintiffs' herein.

61. Prior to the Dependency Court hearing on July 26, 2005, Evergreen staff members Rose Real and Cheryl Harms submitted false statements and evidence about the parents to Det. Hoyt and Yazmina Letona in support of their initial false claims of abuse regarding Olivia Stalker.

62. On or about July 26, 2005 Dr. Elizabeth Mailhot submitted and unsolicited letter to the Dependency Court regarding the alleged validity of the Chlamydia testing, in an effort to support the false and inaccurate claims of her staff.  At the time she submitted the letter, Dr. Mailhot knew that the statements therein were not supported by the information available to her and that she was not qualified to make such a statement.  Dr. Mailhot also knew the statement would cause damage to plaintiffs herein.

63. On July 28, 2005, Det. Hoyt interrogated Olivia Stalker for a second time.  During the interrogation Hoyt tried to persuade Olivia to accuse her father, and continued to ask "who touched you" almost once per minute for nearly 1 ½ hours.

64. In response to the parent's reasonable request for Olivia's complete chart, Valley Medical Center refused two subpoenas, carelessly mishandled lab results, failed to document any chain of custody and destroyed biological samples.

65. Dr. John Hamilton directly interfered with the parent's ability to have the lab results independently examined by Quest Diagnostics by discussing the case with their lab director, who subsequently declined.

66. Valley Medical Center employee Janet Kahle placed two patients with different tests on one slide, failed to conduct any confirmatory testing, and failed to save any samples.  Kahle later attributed one such test sample to Olivia.

67. Janet Kahle failed to follow the manufacturer's protocols for using testing products. There are no protocols for testing the type of sample taken from Olivia, and that the lab test allegedly run on Olivia's sample did not discern between strains of Chlamydia.

68. Yazmina Letona has repeatedly treated Olivia in an abusive manner, amongst others, Letona accuses Olivia of lying, and threatens to separate her from her brothers.

69. On September 1, 2005, Det. Hoyt serves a warrant on the offices of Dr. David Waggoner for confidential medical information regarding any treatment of Watson and Stalker, and then threatens the staff on September 14 to seize all patient records despite their full compliance with the warrant.

70. On or about October 3, and then again in secret, on or about October 6, 2005, Mary Ritter from Santa Clara Valley Medical Center conducted a painful, invasive SART-style exam on Shafer and Riley Watson in the parents' presence.

71. On or about October 17, 2005, case worker Letona committed perjury in Superior Court during testimony when Letona falsely claimed to have written a Master's Thesis at San Jose State University to support County Counsel's representation of her "expert credentials."

72. On November 29, 2005, Deputy District Attorney Aaron West and case worker Letona attended a scheduled appointment with Olivia's treating Psychiatrist, Dr. Ferrari, with the express purpose of defaming and falsely representing the Watson's medical history by stating he "could not be ruled out as a suspect because he took antibiotics in 2004", in order to damage his relationship with Kaiser care providers.

73. On December 7, 2005, case worker Letona conducted abusive interviews with Stalker and Watson, and continued to accuse Watson of being a possible perpetrator, without any reasonable basis to believe that abuse had occurred or that

Watson was the perpetrator.  Additionally during the interview Letona threatened to allow the foster parent to take all three children out of the State for an extended period over the holidays.

74.   In late December 2005, Plaintiffs Watson and Stalker were subjected to unnecessary and invasive serology testing, nearly two months after the Jurisdictional Trial had been completed.

75.   On or about January 13, 2006, West arbitrarily and capriciously sought and obtained an order limiting the parents' medical rights with regard to Olivia, but placed no restrictions on her brothers, and specifically precluded any confirmatory serology tests be run on Olivia.

76.   On January 19, 2006, the parents were directed to a private facility used by the county for court-ordered tests, and were confronted by three county workers including Letona, an unidentified social worker, and a detective, with the express purpose of intimidation and harassment.

77.   On or about February 9, 2006, DDA Aaron West's arbitrarily and capriciously sought and order requiring Watson and Stalker undergo a needless, punitive psychological evaluation by a county-picked psychologist as part of an ongoing pattern of intimidation and harassment.

78.   On April 5, 2006, Dr. Rebecca Jedel, a Santa Clara county-picked psychologist, conducted an abusive psychological evaluation on Olivia over the recommendations of knowledgeable school psychologists in Napa County where Olivia was then residing.

79.   Beginning on May 3, 2006 and ending on May 26, Watson and Stalker were subjected to multiple sessions as part of the court-ordered psychological evaluation, in which Dr. Brian Abbott, a county-picked psychologist, attempted to administer a sexual profiling test designed for perpetrators on Watson, in clear violation of order of the court that no such profiling be permitted.

80.   Despite the parents' completion of the entire case plan including the submission of the psychological report of the county selected psychologist, DFCS continues to refuse to return the children to their parents.

81.   As a direct and proximate result of the conduct set forth throughout this complaint, plaintiffs all suffered severe and substantial emotional distress, mental suffering and humiliation which has manifested itself mentally and physically.

82.   Plaintiffs Olivia, Riley and Shafer have suffered substantial developmental deficits as a direct and proximate result of defendants' conduct as set forth throughout this complaint.

83.   Plaintiffs have also suffered substantial economic damage as a direct and proximate result of the defendants' conduct.

84.    Plaintiffs incurred substantial attorney's fees to seek redress for the conduct of defendants' alleged throughout this complaint.

85.    Plaintiffs have suffered substantial wage lost, substantial incidental costs and medical bills.  Plaintiffs were forced to sell their family home and have suffered further related economic losses.

86.   Plaintiffs have and will continue to incur substantial attorney's fees related to prosecution of this action.

87.   To date, despite numerous interrogations, interviews, assessments, threats and other harassing conduct on the part of defendants, Olivia has never made and allegation that she was sexually abused. There does not exist, nor has there ever existed any physical evidence from which it could reasonably concluded that sexual abuse has occurred.

### IV. FIRST CAUSE OF ACTION
### VIOLATION OF CONSTITUTIONAL PROTECTIONS
### AGAINST UNLAWFUL SEARCH AND SEIZURE
### 4TH Amendment; Title 42 USCS 1983
### City of San Jose, San Jose Police Department
### Chief Davis, Det. Hoyt, Det. Blank

88.   Plaintiffs hereby incorporate paragraphs 1 through 75 above as if set forth fully herein.

89.   At all times herein mentioned, members of the San Jose Police Department were acting under the color of law as police officers.

90.   On or about June 29, 2005 Officers Hoyt, Blank and several unidentified officers from the San Jose Police Department entered the occupied home of plaintiffs at 3381 Braden Court, San Jose, California.

91.   The entry by the officers was without consent, without a warrant, without any other legal justification.

92.   The officers then seized Riley and Shafer the Stalker-Watson Children again without consent, warrant or any other legal justification.

93.   The officers knew at the time of the entry and the seizure that their acts were unlawful.

94.   The entry into the home and taking of the children was in violation of constitutional protections against unlawful search and seizure as set out in the Fourth Amendment to the United States Constitution.

95.   The action taken by the individual officers was later ratified by the Chief, Rob Davis of the San Jose Police Department.

96.   The unlawful search and seizure was a result of an ill conceived custom, policy or practice at the San Jose Police Department to act in concert with the Santa Clara County Department of Family and Child Services to circumvent the Constitutional protections against unlawful search and seizure when allegations of sexual abuse occur. The unlawful action was also a result of poor training of officers in the area of sexual abuse investigation and lack of supervision of officers engaged in sexual abuse investigation.  Chief Davis was aware of the illegal conduct, poor training and investigation yet tolerated such conduct without taking any reasonable action to prevent the conduct from occurring on the date in question or recurring thereafter.

97.   As a direct and proximate result of defendants' conduct alleged herein, plaintiffs suffered substantial injury and damages as set forth above.

98.   The conduct of the individual officers was intentional, malicious and done in reckless disregard of the plaintiffs' constitutional rights and therefore warrant an award of punitive and exemplary damages.

Wherefore Plaintiffs pray as hereinafter specified.

### V. SECOND CAUSE OF ACTION
### VIOLATION OF CONSTITUTIONAL PROTECTIONS
### AGAINST LOSS OF LIBERTY AND DUE PROCESS
### 1st and 14TH Amendment; Title 42 USCS 1983
### City of San Jose, San Jose Police Department
### Chief Davis, Det. Hoyt, Det. Blank

99.   Plaintiff's hereby incorporate paragraphs one through 86 above as if set forth fully

herein.

100. Defendants' action of taking Riley and Shafer without any prior notice or

opportunity to be heard and without any legal justification was a deprivation of the

plaintiffs' constitutional rights to life and liberty and due process.  By their conduct,

the defendants unlawfully interfered with the familial relations of the plaintiffs' family

unit and invaded their privacy.

101. The unlawful conduct was a result of an ill conceived custom, practice or policy at

the San Jose Police Department to act in concert with the Santa Clara County

Department of Family and Child Services to circumvent the Constitutional

protections against unlawful invasion of privacy and taking custody of children

related to allegations of sexual abuse. The unlawful action was also a result of poor

training of officers in the area of sexual abuse investigation and lack of supervision

of officers engaged in sexual abuse investigation.  Chief Davis was aware of the

illegal conduct, poor training and lack of supervision yet tolerated such conduct

without taking any reasonable action to prevent the conduct from occurring on the

date in question or recurring thereafter.

102. As a direct and proximate result of the conduct alleged herein, plaintiffs have

suffered substantial injury and damages as set forth above.

103. The conduct of the individual officers was intentional, malicious and done in
reckless disregard of the plaintiffs' constitutional rights and therefore warrant an
award of punitive and exemplary damages.

Wherefore plaintiffs pray as hereinafter specified:

## VI. THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Hoyt, Blank, Davis, San Jose Police Department

104. Plaintiffs hereby incorporate the entire allegations set forth above in paragraphs 1
through 91 as if set forth fully herein.

105. On June 29, 2005 when Officers Hoyt, Blank and other unidentified San Jose
Police Officers unlawfully entered the home of plaintiffs and seized Riley and Shafer
their conduct was extreme and outrageous.  The officers knew or should have
known that their conduct was unlawful; the officers knew or should have known they
had conducted no investigation, the officers motive was retaliatory, and the officers
knew or should have known there was no urgency for taking such an extreme
measure as removal of Riley and Shafer;

106. Despite the knowledge of the officers that their conduct was illegal, unwarranted
and unreasonable under the circumstances they went forward with the unlawful
entry into the plaintiffs' family home and removed the 1 year old and 3 year old boys,
Riley and Shafer.

107. In addition to the unlawful search and seizure, Officer Hoyt engaged in
interrogation of Olivia regarding the false claims made by others that she had been
abused.  Officer Hoyt is not qualified, experienced or competent to conduct an
interrogation of a minor possessing Olivia's qualities related to claims of abuse made

by others.  The fact that Hoyt was incompetent coupled with the fact that Officer

Hoyt was predisposed to believe in the bald allegations made by others without any

reasonable basis for believing them to be true, led to his engaging in harassing and

inappropriate interrogation of Olivia.  The harassing and inappropriate interrogation

of Olivia was emotionally disturbing to Olivia.  Said conduct was particularly

disturbing, extreme and outrageous when he engaged in a second interview of Olivia

when he was not satisfied with the first interview because Olivia had not made any

claim that her father had abused her.

108. At the time of this conduct, the officers knew the conduct would cause the Plaintiffs

great distress and mental suffering.  The conduct did in fact cause the plaintiffs

severe emotional distress and continues to cause severe emotional distress and will

cause lasting distress, and has in all likelihood caused permanent damage to the

psyche of all plaintiffs herein.  Plaintiffs have had to and will continue to receive

medical and therapeutic treatment in order cope with the severe emotional distress

caused by the conduct of defendants.

109. As a direct and proximate result of the conduct alleged herein, plaintiffs have

suffered substantial injury and damages as set forth above.

110. The conduct of the individual officers was intentional, malicious and done in

reckless disregard of the plaintiffs' rights and therefore warrant an award of punitive

and exemplary damages.

Wherefore plaintiffs pray as hereinafter specified:

**VII. FOURTH CAUSE OF ACTION**
**CIVIL CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS**
**TITLE 42 USCS 1983**
**Hoyt, Blank, Davis, San Jose Police Department**
**City of San Jose, County of Santa Clara**
**Department of Family and Children Services**
**Vu Tran, Norma Sparks**

111. Plaintiff hereby incorporates all the allegations set forth in paragraphs 1 through 98 above as if set forth fully herein.

112. On July 29, 2005 when members of the San Jose Police Department and the County of Santa Clara Department of Family and Child Services entered the home of Plaintiffs they were acting under color of law.  The actions of the defendants were part of an agreement to act in concert with one another for the purpose of circumventing citizens' constitutional rights regarding privacy and protection from unlawful search and seizure in the context of allegations related to child abuse and thereby deprive them of those rights.

113. The defendants, each of them, did purposely avoid conducting any meaningful and reasonable investigation into the veracity of the claimed abuse and acted in unison with one another in order to create a perception of justification or authority by supporting one another as opposed to making the efforts to discover whether in fact the information requisite to establishing legal justification for their entry and seizure actually existed.

114.  The supervisory personnel, Chief Davis of the San Jose Police Department and Sparks, Director of the Department of Family and Children Services for Santa Clara County did create, adopt or ratify the custom, practice or policy of concerted activity

between these two entities for the purpose of convenience for the entity and its employees.

115. The custom, practice or policy of concerted activity by the defendants is maintained and was applied in this case with deliberate indifference and reckless disregard of the constitutional rights of plaintiffs herein.

116. Additionally, the employees from the respective agencies involved in the investigation of allegations of abuse are not adequately trained and supervised.  The fact of inadequate training and supervision is the responsibility of Davis and Sparks, and no reasonable efforts have been made by either Davis or Sparks to correct the apparent deficiencies in training and supervision.

117. As a direct and proximate result of defendants actions herein alleged, the plaintiffs have suffered substantial damages as set forth above.

118. The individual defendants responsible for the conduct stated above, engaged in said conduct intentionally, with malice and or with reckless disregard for the rights of plaintiffs such that an award of exemplary and punitive damages is appropriate.

Wherefore Plaintiffs pray as hereinafter specified.

## VIII. FIFTH CAUSE OF ACTION
## NEGLIGENCE
**City of San Jose, San Jose Police Department
Chief Rob Davis, William Hoyt, Craig Blank**

119. Plaintiff's hereby incorporate by reference the entire allegations set forth above in paragraphs 1 through 106 as if set forth fully herein.

120.  The individual defendants herein were acting within the course and scope of their employment.

121.  The defendants owed a general duty of care to plaintiffs to conduct a fair, reasonable and adequate investigation prior to entering the plaintiffs' home and removing Riley and Shafer.

122. The defendants did not exercise due care and acted below a reasonable police officer standard in failing to conduct a fair, reasonable and adequate investigation into the allegations of abuse.  Defendants did not contact the persons who would have information regarding the allegations or conduct any investigation independent of the reliance on the bald claim that abuse had occurred.

123. Had defendants conducted a fair, reasonable and adequate investigation into the allegations of abuse prior to entering the plaintiffs' home and removing Riley and Shafer they would not have taken such action.

124. The individual defendants are liable under **California Government Code section 820** and the public entity is liable under **California Government Code section 815.2**.

125. The supervisory personnel of the public entity including Chief Davis failed to adequately train and supervise the subordinate officers regarding removal of children from their home related to allegations of abuse.

126. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

127. The conduct of the individual officers was intentional, malicious and done in reckless disregard of the plaintiffs' rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiffs pray as hereinafter specified:

# IX. SIXTH CAUSE OF ACTION
## ABUSE OF PROCESS
### William Hoyt, San Jose Police Department

128. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 127 above as if set forth fully herein.

129. On or about July 15, 2005 Officer Hoyt sought and obtained a warrant for the arrest of Watson and Stalker for the purpose of obtaining biological samples from them.

130. The warrant was obtained by Officer Hoyt under the guise of a claim that there was an investigation for a violation of Penal Code section 288 involving Watson and Stalker, and based on other meritless information.  In fact there was no reasonable basis for an investigation of violation of Penal code section 288 as to Watson and Stalker and this fact was known by Officer Hoyt at the time he represented this fact to the Judge for the purpose of obtaining the warrant.

131. Watson and Stalker were ultimately forced to provide biological samples.

132. On or about September 1, 2005 Officer Hoyt again under the guise of a claim that there was an active investigation for a violation of Penal Code section 288 involving Watson and Stalker, and based on other meritless information obtained a warrant for the purpose of acquiring the medical records of Watson and Stalker.  Again the false information that there was an active penal code section 288 investigation and other meritless information was represented to the Court for the purpose of obtaining a warrant.

133. These acts were done to harass Plaintiffs Stalker and Watson, or to otherwise circumvent lawful means of obtaining evidence for the purpose of the investigation of the Welfare and Institutions 300 et seq. investigation.

134. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

135. The conduct of Officer Hoyt was intentional, malicious and done in reckless disregard of the plaintiffs' rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiffs pray as hereinafter specified:

**X. SEVENTH CAUSE OF ACTION**
**FALSE DETENTION AND ARREST**
**Title 42 USCS section 1983, 4th Amendment U.S. Constitution**
**Hoyt, Blank, Davis, San Jose Police Department, City of San Jose**

136. Plaintiffs hereby incorporate the entire allegations set forth in paragraphs 1-135 above as if set forth fully herein.

137. On or about July 15, 2005 without a warrant or other legal justification, plaintiff Stalker was arrested by defendants Hoyt and Blank.  Stalker was taken into custody and subjected to an unlawful interrogation, without being provided any information as to why she was arrested.

138. Chief Davis was aware of and ratified this conduct.  Chief Davis failed to adequately train his officers regarding conducting a lawful arrest and failed to supervise his officers in carrying out their duties related to arresting persons including plaintiff Stalker herein.

139. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

140. The conduct of the individual officers was intentional, malicious and done in reckless disregard of the plaintiffs' constitutional rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiffs pray as hereinafter specified:

## XI. EIGTH CAUSE OF ACTION
## STATUTORY AND CONSTITUTIONAL VIOLATION
## FOR FALSE ARREST UNDER CALIFORNIA LAW
## Hoyt, Blank, Davis, San Jose Police Department, City of San Jose

141. Plaintiffs hereby incorporate the entire allegations set forth in paragraphs 1 through 140 above as if set forth fully herein.

142. Officers Hoyt and Blank unlawfully arrested plaintiff Stalker without a warrant and without legal justification in violation of Article 1 section 13 of the California Constitution.

143. In so effectuating the unlawful arrest, Officers Hoyt and Blank failed to perform a mandatory duty under Penal Code section 841 by failing to inform Stalker of the intention to arrest before arresting her; failing to inform her of the cause of her arrest; and failing to inform her of the authority for her arrest.  There was no legal justification or excuse for failing to perform this mandatory duty.

144. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

145. The conduct of the individual officers was intentional, malicious and done in reckless disregard of the plaintiffs' constitutional and statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiffs pray as hereinafter specified:

## XII. NINTH CAUSE OF ACTION
## TITLE 42 USCS SECTION 1983
### County of Santa Clara Department of Family and Children Services
### Jewels Ramirez, Vu Tran, Norma Sparks

146. Plaintiffs hereby incorporate the entire allegations set forth in paragraphs 1 through 145 above as if set forth fully herein.

147. On or about May 26, 2005 the Santa Clara County Department of Family and Child Services, Ramirez received information related to a false claim that Olivia had been sexually abused.  Between May 26, 2005 and June 29, 2005 the Santa Clara County Department of Family and Child Services took little or no action to investigate or address the claim.

148. On or about June 7, 2005 the Santa Clara County Department of Family and Child Services (hereinafter DFCS) contacted plaintiffs Stalker and Watson to set up a meeting with Stalker and Watson regarding the allegations.  Stalker and Watson agreed to meet if they could be accompanied by legal counsel.  Thereafter Stalker and Watson continued to assert their right to be represented by counsel related to the allegations being made regarding child abuse.

149.  Between June 7, 2005 and June 15, 2005 little communication occurred between Ramirez and Plaintiffs.  On June 15, 2005 Jewels Ramirez and Stalker and Watson were still trying to set up a meeting, and Stalker and Watson continued to assert their desire to have counsel present.  At no time did Ramirez or any other employee of DFCS give any indication regarding any sense of urgency or that there was any interest related to the boys, Riley and Shafer.  Sometime after June 15, 2005 Ramirez went on

vacation.  Between June 15, 2005 and June 29, 2005 Stalker and Watson heard nothing from the DFCS.

150. Without justification and as a result of the misperception of Defendants that Stalker and Watson were being uncooperative with Defendants by asserting their lawful right to counsel under the 6th Amendment of the U.S. Constitution, Defendant Vu Tran acting under color of law, along with the San Jose Police department and unidentified employees of defendant DFCS entered the family home of plaintiffs without a warrant and without any other legal justification, including but not limited to lack of any emergency.  After unlawfully entering plaintiffs home in violation of their rights under the 4th Amendment of the United States Constitution, Tran along with the San Jose Police Department seized Riley and Shafer without legal justification and in retaliation for plaintiffs asserting their right to counsel.  Before June 29, 2006 DFCS asserted no interest nor did they possess any information to reasonably conclude that Riley and Shafer were in immediate danger of harm or any danger of harm at all.

151. The action of removing the children from the home was done without any prior notice or opportunity to be heard regarding the basis for the removal.  No emergency existed for removal of the children.

152. Plaintiffs' constitutional rights under the first, fourth, sixth and fourteenth amendment were violated by defendants herein.

153. The actions of defendants were ratified by supervisory personnel, including Sparks, Director of DFCS.  The action was also the result of a failure by Sparks to adequately train or adequately supervise the subordinate employees related to

investigation of claims of child abuse, communications with parents and parent's rights

to counsel and lawful taking of children into custody without parental consent.

154. The conduct of defendants herein was also part of a custom, practice or policy to

retaliate against parents for their assertion of right to counsel and further part of a

custom, practice or policy to remove children from the family home without lawful

justification for entry and removal in cases involving allegations of child abuse, despite

the sufficiency or nature of those allegations.  The conduct of defendants at all times

herein alleged was done with deliberate indifference to the rights of plaintiffs.

155. As a direct and proximate result of the conduct alleged herein, plaintiffs have

suffered substantial injury and damages as set forth above.

156. The conduct of the individual employees was intentional, malicious and done in

reckless disregard of the plaintiffs' constitutional rights and therefore warrant an award

of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified:

### XIII. TENTH CAUSE OF ACTION
### TITLE 42 USCS SECTION 1983
### First and Fourteenth Amendment of the U.S. Constitution
### County of Santa Clara Department of Family and Children Services
### Jewels Ramirez, Vu Tran, Norma Sparks, Yazmina Letona

157. Plaintiffs hereby incorporate by reference the entire allegations set forth in

paragraphs 1 through 156 above as if set forth fully herein.

158. Defendants took custody of Riley, Shafer and Olivia prior to any court process

related to said action.  Thereafter Plaintiff Watson was denied any contact or

communication with his children for a period of approximately two months.  After the two

months expired Plaintiff Watson's contact, visitation and communication was

substantially limited and continues to be limited.  Initially, Plaintiff Stalker's contact,

visitation and communication with her children was substantially limited and although

over time she has been given more visitation, contact and communication it remains

substantially limited.

159. The initial deprivation prior to a juvenile court petition being filed was done without

court process and without legal cause or justification.

160.  The continued deprivation after the petition was filed and while the children remain

in the custody and control of DFCS has not been and is not with legal cause or

justification.

161. The actions herein alleged were done on part of Tran, Letona and Sparks.

162. The deprivation of visitation, custody and communication with the children violated

the plaintiff's liberty interest and interfered with their right to familial relations and

associations;

163. Besides lacking legal cause or justification the action on the part of DFCS

employees to deprive plaintiffs of their liberty interest in familial relations and

association, the limitations on visitation, contact and communications were arbitrary and

capricious and were in retaliation for plaintiffs assertion of constitutional due process

relative to the allegations being made against them and further in retaliation for their

asserting their right to legal counsel to represent them in the proceedings.

164. The actions herein alleged were ratified by defendant Sparks.  Moreover defendant

Sparks failed to adequately train her subordinate employees and to adequately

supervise her subordinate employees related to parental rights to counsel, visitation,

custody, and communication with their children.

165. At all times herein alleged the conduct of all DFCS employees related to this matter was done with deliberate indifference to the rights of all plaintiffs.

166. The actions of defendants herein alleged were part of a custom, practice or policy to retaliate against parents involved with DFCS in proceedings related to child abuse, by limiting the contact, visitation and communication between the parents and children, when those parents assert their right to due process and right to counsel.

167. In addition to the deprivation related to limitations in visitation, communication, and contact to which plaintiffs were subjected while under the supervision and custody of DFCS, DFCS employees has acted arbitrarily by limiting hugging, kissing and other normal physical contact during visitation between Watson, Stalker and Olivia, Riley and Shafer.

168. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

169. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' constitutional rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified:

## XIV. ELEVENTH CAUSE OF ACTION
## NEGLIGENCE
### Santa Clara County Department of Family and Children Services
### Yazmina Letona, Norma Sparks, Sharon Burgan

170. Plaintiffs hereby incorporate the entire allegations set forth in paragraphs 1 through 169 above as if set forth fully herein.

171. Defendants have engaged in negligent and arbitrary conduct related to the placement and supervision of Plaintiffs Olivia, Riley and Shafer while in the custody and control of DFCS.

172. Defendant Letona has been and continues to be principally responsible for the supervision of placement of the minor plaintiffs.

173. Letona and DFCS owed statutory duties to the plaintiffs to exercise care in the supervision of their placement.  Additionally because the DFCS took custody and control of the minor plaintiffs they owe a general duty of care to the plaintiffs for the reasonable supervision of their placement.

174. The children were placed and detained in emergency foster placement for several months without any reasonable efforts for more stable placement in violation statute.

175. The children were placed by Letona in a Spanish speaking only foster home for 6 months despite the exceptional needs they require particularly with regard to language and communication.  The children suffered substantial developmental detriment as a result of their placement in a Spanish speaking only foster home for a substantial period of time.  The children have special requirements related to their normal development that were not addressed, were ignored and were suppressed while under the supervision of Letona.

176. Despite the fact that relative placement was available for the children, Letona and the DFCS failed to make any reasonable efforts to investigate or facilitate such placement in violation of statute.  This was done despite several requests by plaintiffs Watson and Stalker for same, and despite a willing, able and qualified relative being available.

177. At all times herein Letona, Castaldi and DFCS have sought to thwart the policy of reunification for the plaintiffs' family in violation of statute;

178. DFCS took custody of the children without warrant and without reasonable cause in violation of statute;

179. Letona, Castaldi and the DFCS violated at least the following statutes:

- California Welfare and Institutions Code sections 300.2; 302; 305; 309; 319; 329; 361.3 and 396.

180. Defendant Sparks failed to adequately train DFCS employees including but not limited to Letona, Castaldi and Burgan with regard to supervision of children in foster care placement;

181. Defendant Sparks failed to adequately supervise Letona, Castaldi and Burgan and ratified their conduct.

182. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

Wherefore plaintiff prays as hereinafter specified:

## XV. TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Santa Clara County Department of Family and Children Services
### Yazmina Letona, Norma Sparks, Sharon Burgan, Linda Castaldi

183. Plaintiffs hereby incorporate the entire allegations set forth in paragraphs 1 through 182 above as if set forth fully herein.

184. Defendants have engaged in intentional and arbitrary conduct related to the placement and supervision of Plaintiffs Olivia, Riley and Shafer while in the custody and control of DFCS.

185. Defendant Letona and Castaldi have been and continue to be principally responsible for the supervision of placement of the minor plaintiffs.

186. Letona, Castaldi and DFCS owe statutory duties to the plaintiffs to exercise care in the supervision of their placement.  Additionally because the DFCS took custody and control of the minor plaintiffs they owe a general duty of care to the plaintiffs for the reasonable supervision of their placement.

187. The children were placed and detained in emergency foster placement for several months without any reasonable efforts for more stable placement in violation statute.

188. The children were placed by Letona in a Spanish speaking only foster home for 6 months despite the exceptional needs they require particularly with regard to language and communication.  The children suffered substantial developmental detriment as a result of their placement in a Spanish speaking only foster home for a substantial period of time.  The children have special requirements related to their normal development that were not addressed, were ignored and were suppressed while under the supervision of Letona and Castaldi.

189.  Despite the fact that relative placement was available for the children, Letona and Castaldi, and the DFCS failed to make any reasonable efforts to investigate or facilitate such placement in violation of statute.  This was done despite several requests by plaintiffs Watson and Stalker for same, and despite a willing, able and qualified relative being available.

190. At all times herein Letona, Castaldi and DFCS have sought to thwart the policy of reunification for the plaintiffs' family in violation of statute;

191. DFCS took custody of the children without warrant and without reasonable cause in violation of statute;

192. Letona, Castaldi and the DFCS violated at least the following statutes:

- California Welfare and Institutions Code sections 300.2; 302; 305; 309; 319; 329; 361.3 and 396.

193. Defendant Letona and Castaldi and other employees of DFCS acted with deliberate indifference to their statutory obligations with the purpose of causing harm to plaintiffs.

194. In addition to the statutory conduct described above, defendant Letona and Castaldi intentionally reported fabricated statements and conduct regarding interaction between the plaintiffs during the course of visitation with the intent to cause further suffering by the family by thwarting the efforts of the family to reunify.

195.  Defendant Sparks failed to adequately train DFCS employees including but not limited to Letona, Burgan and Castaldi with regard to supervision of children in foster care placement;

196. Defendant Sparks failed to adequately supervise Letona, Burgan, and Castaldi and ratified their conduct.

197. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

198. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified:

## XVI. THIRTEENTH CAUSE OF ACTION
## MALICIOUS PROSECUTON
### Santa Clara County Department of Family and Children Services
### Yazmina Letona, Norma Sparks, Sharon Burgan

199. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 198 above as set forth fully herein.

200. Letona and Burgan submitted fabricated evidence and failed to disclose known exculpatory evidence in submitting a petition to the court for purpose of justifying continued detention of the children.  At the time of the submission of the original petition defendants knew that there was no physical evidence to support the allegations of abuse yet failed to disclose said fact to the court.

201. Throughout the proceedings Letona has submitted false reports to the court regarding statements and conduct between the plaintiffs that consisted of false statements and conduct from which inappropriate sexual conduct could be inferred if believed.

202. Letona has committed perjury during the course of court proceedings regarding information related to the actions and statements of plaintiffs and other DFCS employees and third parties;

203. Letona has committed perjury during court proceedings regarding her qualifications and expertise for the purpose rendering an opinion in court.  The opinion rendered was false, was based on fabricated evidence for its factual foundation and was based on false testimony related to the qualifications of Letona regarding her experience and education for the purpose of providing such opinion.

204. All false statements, perjury and fabrication of evidence on the part of Letona was done with malicious intent to harm or injure plaintiffs and with deliberate indifference to their legal rights, and with the purpose of unlawfully preventing reunification of the family.

205. Sparks and DFCS negligently retained Letona despite knowledge that she has a history of committing perjury and fabricating evidence.

206.  As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

207. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

208. As a result of Letona's violation of statute under Government Code section 820.21 as set forth above, her actions alleged herein are not subject to civil immunity and the entity for which she works likewise does not have such immunity.

Wherefore plaintiff prays as hereinafter specified:

## XVII. FOURTEENTH CAUSE OF ACTION
## PROFESSIONAL NEGLIGENCE
### Aaron West, Santa Clara County District Attorney's Office, George Kennedy

209. Plaintiffs hereby incorporate the entire allegations set forth in paragraphs 1 through 208 above as if set forth fully herein.

210. At all times herein relevant Aaron west was acting within the course and scope of her employment for the District Attorney's Office of Santa Clara County.

211. Aaron West at the direction of George Kennedy pursuant to a policy, custom and practice of the Santa Clara County District Attorney's Office undertook representation of

the minor plaintiffs in this case despite a direct conflict in that the Santa Clara County District Attorney's Office was acting in concert with the City of San Jose Police Department as part of the prosecution team for the purpose of investigating potential criminal charges against Watson and/or Stalker for conduct related to the claims that led to the Welfare and Institutions code section 300 dependency proceeding herein.  As such, West and the Santa Clara County District Attorney's Office did not have such independence as required to adequately, effectively, impartially and ethically represent the children's best interest in this matter.

212.  Aaron West failed to take any reasonable action to investigate the false claims of abuse made and failed at any time to consider that such claims may in fact be false.

213. Aaron West failed to take any reasonable action to investigate the appropriateness of the placement and supervision of the minor children;

214. Aaron West failed to take any reasonable action to insure that the children's special needs were being met by their placement and supervision;

215. Aaron West failed to take any reasonable action to protect the minor children from injury or damage as a result of their placement in foster care;

216. Aaron West engaged in joint efforts with County Counsel, San Jose Police Department and DFCS to thwart the reunification of plaintiffs as a family without any reasonable basis for doing so in violation of her duty of impartiality and ethical responsibility to her client.

217. Aaron West failed to perform her duties consistent with the standard of care for an attorney representing minors in a W&I 300 proceeding.

218. Aaron West has failed to communicate with her clients and has blindly represented the interest of the Santa Clara County District Attorney's Office and the other Santa Clara County entities without having any understanding of the needs and desires of her clients.

219. Aaron West has violated at least the following rules of professional conduct during the course of her representation of the minors herein:

   - Rule 1-100; 3-110; 3-200; 3-310; 3-500;

220. Aaron West while acting within the course of scope of her employment at all times relevant herein, said course and scope of employment for the purpose of this matter was different than her ordinary prosecutorial duties during a criminal proceeding, rather she acted in the capacity of a civil attorney during a civil proceeding in the juvenile court;

221. Throughout the past year, Aaron West has engaged in administrative and investigative activity outside the ordinary scope of litigation for the purposes of thwarting efforts of the plaintiffs to reunify as a family;  Amongst others such activity included meeting with adverse parties to her client and seeking to suppress evidence from disclosure to plaintiffs Watson and Stalker;

222. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

Wherefore plaintiffs pray as hereinafter specified;

### XVIII. FIFTEENTH CAUSE OF ACTION
### STATUTORY VIOLATION FOR FALSE REPORT
### OF CHILD ABUSE PER P.C. 11172 (a)
### Rose Real, Clifton Black, Evergreen School District

223. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 222 above as if set forth fully herein;

224. On or about May 26, 2005 a false claim of sexual abuse on Olivia was made by an employee of the Evergreen School District, Rose Real.  The claim was made under the guise of a mandatory report under penal code section 11166.  The report was not required nor was it authorized under penal code section 11164 et seq. in that it was totally fabricated, it was not based on the knowledge or observation of a mandatory reporter of a child whom the mandatory reporter knows or reasonably suspects has been the victim of child abuse or neglect.  There was no "reasonable suspicion" as defined therein. Additionally there was no reasonable basis to believe or any evidence of sexual abuse as defined by Penal Code section 11165.1;

225. In fact, the false claim came in retaliation for Watson – Stalker having made numerous complaints regarding the failure and abuse of the District employees related to the treatment of Olivia, and exceptional needs student, to conduct a complete assessment of Olivia's educational needs; to create an appropriate Individualized Education Plan; and to initiate a Due Process proceeding;

226. For a period of a least three years it has been known to Rose Real and the Evergreen School District Employee defendants that Olivia places her hands between her legs in the area of her crotch and rocks back and forth. This conduct occurs in open public, during school hours with other children and teachers present. It is further known

and has been known that the matter was addressed by Watson and Stalker by taking Olivia to her pediatrician, to child psychologist and child psychiatrist to determine the cause of her action as described above.  It is known to Rose Real and other employee defendants of Evergreen School District that those professionals determined that such action was a comforting action by Olivia during times of stress, as a result of her developmental conditions.

227. Because the claim is false and because Rose Real was in possession of information and had personal knowledge of such information and history of the child, knowing the report to be false, Rose Real is subject to liability under Penal Code section 11172.

228.  As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

229. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiffs pray as hereinafter specified:

### XIX. SIXTEENTH CAUSE OF ACTION
### NEGLIGENCE
### Rose Real, Clifton Black, Evergreen School District, Robert Pruitt, Cheryl Harms, Gary Kishimoto, Claudia Blodgett

230. Plaintiffs hereby incorporate the entire general allegations set forth in paragraphs 1 through 229 above as if set forth fully herein;

231. The false claim of sexual abuse alleged herein resulted from a failure on the part of Clifton Black as Superintendent of the School District to ensure that a sufficient training program was in place to meet the requirements of Penal Code section 11166.5 or that

inadequate supervision exists at the district to ensure compliance with Penal Code section 11166.5.

232. Additionally once the report was made the school district personnel, despite knowledge of the falsity of the claim or without any reasonable basis for believing it to be true engaged in a course of negligent conduct in breach of their duty to plaintiffs under the education code.  The statutory duty is set forth in at least the following sections of the code:

 - 200, 201, 220, 44265, 49422(e)(1), 49424, 56320, 56324;

233. The District Employees undertook to engage Olivia in certain testing and assessment;

234. The testing and assessment engaged included non-scientific assessments and methods performed by non-qualified individuals.

235. The purpose of the testing and assessment was not authorized by statute in that it was directed at corroboration of the false claims made by District Employees as opposed to furthering the educational needs of Olivia.

236. The testing and assessment was done without notice to Plaintiffs Watson and Stalker and without their consent.

237. The testing and assessment undertook by the District Employees resulted in unreliable and tainted misinformation that would ultimately lead to later accusations and the filing of a W&I 300 section dependency petition in the Santa Clara County Superior Court, Juvenile division.

238.  The unauthorized conduct of the District Employees and the tainted fruits of those efforts served the effect intended to provide misinformed parties with a means for

corroborating the accusations of abuse, despite the falsity of the claim and despite the misinterpretation of information ascertained during the process and thereafter misused to the detriment of plaintiffs.

239. Plaintiffs are informed and believe and thereon allege that each of the named District Employees played an active role in the reporting, assessment, testing or other dissemination of false information regarding plaintiffs.

240. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

Wherefore plaintiff prays as hereinafter specified;

## XX. SEVENTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Rose Real, Clifton Black, Evergreen School District, Robert Pruitt, Cheryl Harms, Gary Kishimoto, Claudia Blodgett

241. Plaintiffs hereby incorporate the entire general allegations set forth in paragraphs 1 through 240 above as if set forth fully herein;

242. The false claim of sexual abuse alleged herein resulted from a failure on the part of Clifton Black as Superintendent of the School District to ensure that a sufficient training program was in place to meet the requirements of Penal Code section 11166.5 or that inadequate supervision exists at the district to ensure compliance with Penal Code section 11166.5.

243. Additionally once the report was made the school district personnel, despite knowledge of the falsity of the claim or without any reasonable basis for believing it to be true engaged in a course of intentional conduct in breach of their duty to plaintiffs under the education code.  The statutory duty is set forth in at least the following sections of the code:

- 200, 201, 220, 44265, 49422(e)(1), 49424, 56320, 56324;

244. The District Employees undertook to engage Olivia in certain testing and assessment;

245. The testing and assessment engaged included non-scientific assessments and methods performed by non-qualified individuals.

246. The purpose of the testing and assessment was not authorized by statute in that it was directed at corroboration of the false claims made by District Employees as opposed to furthering the educational needs of Olivia.

247. The testing and assessment was done without notice to Plaintiffs Watson and Stalker and without their consent.

248. The testing and assessment undertook by the District Employees resulted in unreliable and tainted misinformation that would ultimately lead to later accusations and the filing of a W&I 300 section dependency petition in the Santa Clara County Superior Court, Juvenile division.

249.  The unauthorized conduct of the District Employees and the tainted fruits of those efforts served the effect intended to provide misinformed parties with a means for corroborating the accusations of abuse, despite the falsity of the claim and despite the misinterpretation of information ascertained during the process and thereafter misused to the detriment of plaintiffs.

250. Plaintiffs are informed and believe and thereon allege that each of the named District Employees played an active role in the reporting, assessment, testing or other dissemination of false information regarding plaintiffs.

251. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

252. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified;

## XXI. EIGHTEENTH  CAUSE OF ACTION
## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT AND 504 OF THE REHABILITATION ACT
### Rose Real, Clifton Black, Evergreen School District, Robert Pruitt, Cheryl Harms, Gary Kishimoto, Claudia Blodgett

253. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 252 above as if set forth fully herein.

254. Defendants, School District Employees did engage in the conduct alleged above with full knowledge of the fact that Plaintiff Olivia is disabled.

255. Olivia is in fact a qualified individual under the ADA as set forth above.

256. Defendants, School District Employees did discriminate against Olivia under the ADA and Rehabilitation Act by making a false claim and engaging in the statutory violations set forth above for the purpose of depriving Olivia with the benefits of the special education program to which she was entitled at Evergreen School District on the account of her disability.

257. Defendants, supervisory personnel participated in the conduct or otherwise ratified said conduct, including but not limited to superintendent Black.

258. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

259. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified;

## XXII. NINETEENTH CAUSE OF ACTION
### TITLE 42 USCS SECTION 1983, 14TH AMENDMENT U.S. CONSTITUTION
### Santa Clara Valley Medical Center, Dr. John Hamilton
### Anita Noble, Janet Kahle, Mary Ritter, David Kearns, Rajul Kazi

260. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 259 above as if fully set forth herein.

261. Defendants, employees of Santa Clara Valley Medical Center did engage in intentional and reckless conduct related to attaining and destroying evidence used against plaintiffs in the W&I 300 dependency proceeding.

262. The aforesaid conduct included but was not limited to 1) utilization of methods of analysis not supported by any reasonable scientific standards; 2) Fabrication of evidence related to testing of biological samples; 3) Fabrication of evidence related to an alleged SART examination by Mary Ritter; 4) Concealment of negligence by Janet Kahle; 5) Interference with access to evidence and/or review of evidence by plaintiffs by Dr. John Hamilton; 6) Recklessly Reporting false laboratory findings related to biological samples of some unknown person and attributing said findings to Olivia for the distinct purpose of interference with the familial relations of plaintiffs; 7) Acting in concert with one another to conceal the negligence and falsity of the information disseminated from the lab regarding Olivia for the purpose of presenting false and misleading information to the counsel; 8) Intentional destruction of evidence; 9) Providing false testimony for

the purpose of perpetuating the concealment of the fact of negligence and incompetence at the lab.

263. As a result of said conduct, plaintiffs were subjected to loss of liberty in familial relations, were subjected to an ongoing W&I 300 dependency proceeding, of which this false evidence was a pivotal part, and still have not reunified as a family.

264. Said conduct was part of a custom, practice or policy regarding the handling, analysis and reporting of test to biological samples in cases involving allegations of sexual abuse;

265. Said conduct, and said custom, practice and policy was known to, accepted and ratified by Dr. Hamilton, Laboratory Directory at Santa Clara Valley Medical Center, and a policy maker at the hospital laboratory.

266. Said conduct, and said custom, practice and policy was known to, accepted and ratified by Dr. Mailhot, department chairperson for the Laboratory at Santa Clara Valley Medical Center, and a policy maker at the hospital laboratory.

267. Dr. Hamilton failed to adequately train and failed to adequately supervise subordinate laboratory personnel regarding the scientific standards for handling, analysis and reporting test results to biological samples and as to ethical requirements of laboratory personnel in disclosing errors, negligence and incompetence in the laboratory.

268. Dr. Mailhot failed to adequately train and failed to adequately supervise subordinate laboratory personnel regarding the scientific standards for handling, analysis and reporting test results to biological samples and as to ethical requirements

of laboratory personnel in disclosing errors, negligence and incompetence in the laboratory.

269. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

270. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified:

## XXIII. TWENTIETH CAUSE OF ACTION
## NEGLIGENCE
### Santa Clara Valley Medical Center, Dr. John Hamilton
### Anita Noble, Janet Kahle, Mary Ritter, David Kearns, Rajul Kazi

271. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 270 above as if fully set forth herein.

272. Defendants, employees of Santa Clara Valley Medical Center did engage in negligent conduct related to attaining and destroying evidence used against plaintiffs in the W&I 300 dependency proceeding.

273. The aforesaid conduct included but was not limited to 1) utilization of methods of analysis not supported by any reasonable scientific standards; 2) Fabrication of evidence related to testing of biological samples; 3) Fabrication of evidence related to an alleged SART examination by Mary Ritter; 4) Concealment of negligence by Janet Kahle; 5) Interference with access to evidence and/or review of evidence by plaintiffs by Dr. John Hamilton; 6) Recklessly Reporting false laboratory findings related to biological samples of some unknown person and attributing said findings to Olivia for the distinct purpose of interference with the familial relations of plaintiffs; 7) Acting in concert with

one another to conceal the negligence and falsity of the information disseminated from the lab regarding Olivia for the purpose of presenting false and misleading information to the counsel; 8) Intentional destruction of evidence; 9) Providing false testimony for the purpose of perpetuating the concealment of the fact of negligence and incompetence at the lab.

274. As a result of said conduct, plaintiffs were subjected to loss of liberty in familial relations, were subjected to an ongoing W&I 300 dependency proceeding, of which this false evidence was a pivotal part, and still have not reunified as a family.

275. Said conduct was part of a custom, practice or policy regarding the handling, analysis and reporting of test to biological samples in cases involving allegations of sexual abuse;

276. Said conduct, and said custom, practice and policy was known to, accepted and ratified by Dr. Mailhot, Department Chairperson, and Dr. John Hamilton, Laboratory Directory at Santa Clara Valley Medical Center, and policy makers at the hospital laboratory.

277. Dr. Mailhot and Dr. Hamilton failed to adequately train and failed to adequately supervise subordinate laboratory personnel regarding the scientific standards for handling, analysis and reporting test results of biological samples and as to ethical requirements of laboratory personnel in disclosing errors, negligence and incompetence in the laboratory.

278. The Santa Clara Valley Medical Center owed a duty to plaintiffs in that they were in custody and control of Olivia and dictated what facility and personnel would be utilized to attain and test her biological samples.  Further the lab is subject to statutory

requirements and certification by the State Department of Health, the California Code of Regulations and the Health and Safety Code that addresses each of the claims set forth above.

279. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

280. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified:

## XXIV. TWENTY-FIRST CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Santa Clara Valley Medical Center, Dr. John Hamilton
### Anita Noble, Janet Kahle, Mary Ritter, David Kearns, Rajul Kazi

281. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 280 above as if fully set forth herein.

282. Defendants, employees of Santa Clara Valley Medical Center did engage in intentional conduct related to attaining and destroying evidence used against plaintiffs in the W&I 300 dependency proceeding.

283. The aforesaid conduct included but was not limited to 1) utilization of methods of analysis not supported by any reasonable scientific standards; 2) Fabrication of evidence related to testing of biological samples; 3) Fabrication of evidence related to an alleged SART examination by Mary Ritter; 4) Concealment of negligence by Janet Kahle; 5) Interference with access to evidence and/or review of evidence by plaintiffs by Dr. John Hamilton; 6) Recklessly Reporting false laboratory findings related to biological samples of some unknown person and attributing said findings to Olivia for the distinct

purpose of interference with the familial relations of plaintiffs; 7) Acting in concert with one another to conceal the negligence and falsity of the information disseminated from the lab regarding Olivia for the purpose of presenting false and misleading information to the counsel; 8) Intentional destruction of evidence; 9) Providing false testimony for the purpose of perpetuating the concealment of the fact of negligence and incompetence at the lab.

284. As a result of said conduct, plaintiffs were subjected to loss of liberty in familial relations, were subjected to an ongoing W&I 300 dependency proceeding, of which this false evidence was a pivotal part, and still have not reunified as a family.

285. Said conduct was part of a custom, practice or policy regarding the handling, analysis and reporting of test to biological samples in cases involving allegations of sexual abuse;

286. Said conduct, and said custom, practice and policy was known to, accepted and ratified by Dr. Hamilton, Laboratory Directory at Santa Clara Valley Medical Center, and Dr. Mailot, Department Chairperson, policy makers at the hospital laboratory.

287. Dr. Mailhot and Dr. Hamilton failed to adequately train and failed to adequately supervise subordinate laboratory personnel regarding the scientific standards for handling, analysis and reporting test results of biological samples and as to ethical requirements of laboratory personnel in disclosing errors, negligence and incompetence in the laboratory.

288. The Santa Clara Valley Medical Center owed a duty to plaintiffs in that they were in custody and control of Olivia and dictated what facility and personnel would be utilized to attain and test her biological samples.  Further the lab is subject to statutory

requirements and certification by the State Department of Health, the California Code of

Regulations and the Health and Safety Code that addresses each of the claims set forth

above.

289. As a direct and proximate result of the conduct alleged herein, plaintiffs have

suffered substantial injury and damages as set forth above.

290. The conduct of the individual employees was intentional, malicious and done in

reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of

punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified:

### XXV. TWENTY-SECOND CAUSE OF ACTION
### TITLE 42 USCS SECTION 1983, FOURTEENTH AMENDMENT
### Santa Clara Office of County Counsel
### Rima Singh, Ann Miller Ravel

291. Plaintiffs hereby incorporate by reference the entire allegations set forth in

paragraphs 1 through 290 above as if set forth fully herein.

292. Defendants Rima Singh and Ann Miller Ravel acted outside the judicial process to

coordinate the testimony of all defendants herein for the purpose of providing a false

account to the court and with the effect of concealing and suppressing evidence,

facilitating perjury, concealing unlawful acts by other divisions of Santa Clara County

and the City of San Jose and proliferating false claims against plaintiffs.

293. Defendants Rima Singh and Ann Miller Ravel have concealed or suppressed

evidence during the W&I 300 proceeding;

294. Rima Singh and Ann Miller Ravel have failed to disclose illegal conduct by their

clients perpetuated upon the court in deprivation of plaintiffs' constitutional right to due

process and in violation of their ethical obligations and standards of performance under the rules of professional conduct.

295. The acts of County Counsel were done in furtherance of the custom, policy, practice of DFCS to retaliate against parents who seek to assert their constitutional right to due process and counsel in response to allegations of child abuse involving their children.

296. The acts of County Counsel have led to a prolonged and unwarranted denial of the reunification of the plaintiffs' family unit.

297. Ann Miller Ravel is the County Counsel for the County of Santa Clara, her role in the above described conduct has been to ratify most unlawful conduct and direct in setting forth policy regarding the instant case.

298.  As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

299. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

Wherefore plaintiff prays as hereinafter specified:

### XXVI. TWENTY-THIRD CAUSE OF ACTION
### TITLE 42 USC SECTION 1983
### CIVIL CONSPIRACY –OPPRESSIVE GOVERNMENTAL CONDUCT
### DEPRIVATION OF SUBSTANTIVE DUE PROCESS RIGHTS
### ALL DEFENDANTS

300. Plaintiff hereby incorporates the entire allegations set forth in paragraphs 1 through 299 above as if set forth fully herein.

301. Defendants have acted in concert with one another at various times throughout the last year to deprive plaintiffs of their constitutional rights and liberty interest in maintenance of family relations, custody, control and supervision by the parents of their children and have otherwise set out to continue depriving them of contact with one another.

302. In Santa Clara County the divisions of the County government have established a method of operation relative to each division's involvement with "child protective services". The methods of operation is one of convenience to the respective agencies employees and supervisors as opposed to the rights and protections to be afforded to the persons that are subjected to the jurisdiction of the agencies. The governmental agencies operate at their convenience in cooperation with one another with deliberate indifference to the very persons that are responsible for providing the tax basis for their respective salaries.

303. The governmental agencies are lax in their standards and are essentially unchecked in the juvenile court system due to the united front they present to the court when called upon to present their case.

304. The result of this method of operation is total disregard for the constitutional rights of persons such as plaintiffs herein in an effort to maintain that method of operation.

305. The method of operation has been essentially set out above. In this case it has resulted in a false accusation of sexual abuse tearing a family apart. For one year and continuing despite enormous efforts by the family and compliance with all facets of the reunification plan, the plaintiffs are still apart. There is no physical evidence to support a claim of sexual abuse. There has never been any accusation of sexual abuse made

by any member of the family.  There is no reasonable basis to infer, believe or continue to ponder whether sexual abuse ever occurred.

306.  The defendants acting in concert with one another have been successful in concealing their method of operation for one year and depriving plaintiffs of their familial relations that entire time.

307. Each defendant played a role at one time or another.  The child protective services system that exists in Santa Clara County is interdependent on each of the various divisions of the county government and the personnel that have been named herein. The system can only continue to exist when each division supports the other regardless of the wrongdoing or incompetence that may exist in the various divisions. This is the agreement between the parties to act in concert with one another.

308.  When the allegations occur in the City of San Jose, the San Jose Police Department reaffirms their place in the system as occurred in this case.

309.  The outrageous government conduct described herein is responsible for depriving plaintiffs their right to substantive due process.

310. As a direct and proximate result of the conduct alleged herein, plaintiffs have suffered substantial injury and damages as set forth above.

311. The conduct of the individual employees was intentional, malicious and done in reckless disregard of the plaintiffs' statutory rights and therefore warrant an award of punitive and exemplary damages.

**WHEREFORE PLAINTIFFS PRAY AS HEREINAFTER SPECIFIED:**

1. **FOR COMPENSATORY DAMAGES, INCLUDING BUT NOT LIMITED TO WAGE LOSS, OUT OF POCKET EXPENSES, LOSSES ASSOCIATED WITH**

THE EMERGENCY SALE OF THEIR HOME, ATTORNEYS FEES INCURRED IN PURSUING THEIR CONSTITUTIONAL RIGHTS AND SEEKING TO REDRESS AND CORRECT THE DEPRIVATION EXPERIENCED IN THE ONGOING W&I CASE;

2. EMOTIONAL DISTRESS DAMAGES, PAST AND FUTURE; THE VALUE OF THE LOSS OF ONE YEAR AND COUNTING FAMILIAL RELATIONS;

3. REIMBURSEMENT OF MEDICAL BILLS AND MEDICATION, PAST AND FUTURE;

4. OTHER GENERAL COMPENSATORY DAMAGES ACCORDING TO PROOF;

5. OTHER SPECIAL COMPENSATORY DAMAGES ACCORDING TO PROOF;

6. PUNITIVE AND EXEMPLARY DAMAGES AS ALLOWED BY STATUTE;

7. ATTORNEYS FEES AS PROVIDED BY STATUTE;

8. SUCH OTHER RELIEF AS THE COURT DEEMS PROPER;

9. COST OF SUIT INCURRED;

10. INTEREST AS ALLOWED BY STATUTE.

Dated: July 19, 2006          /s/ Peter Johnson
                              Peter Johnson
                              Attorney for Plaintiffs


**JURY DEMAND**

Plaintiffs hereby demand a jury.

Dated: July 19, 2006          /s/ Peter Johnson
                              Peter Johnson
                              Attorney for Plaintiffs