**E-FILED on**    1/3/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRACY WATSON, RENEE STALKER, OLIVIA STALKER, SHAFER WATSON, RILEY WATSON,<br><br>        Plaintiffs,<br><br>        v.<br><br>COUNTY OF SANTA CLARA, COUNTY OF SANTA CLARA DEPARTMENT OF FAMILY AND CHILDREN SERVICES, COUNTY OF SANTA CLARA DEPARTMENT OF COUNTY COUNSEL, COUNTY OF SANTA CLARA DISTRICT ATTORNEYS OFFICE, SANTA CLARA VALLEY MEDICAL CENTER, EVERGREEN SCHOOL DISTRICT, CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, NORMA SPARKS, YAZMINA LETONA, SHARON BURGAN, JEWELS RAMIREZ, VU TRAN, ANN MILLER RAVEL, RIMA SINGH, AARON WEST, GEORGE KENNEDY, CLIFTON BLACK, ROSE REAL, ROBERT PRUITT, CHERYL HARMS, CLAUDIA BLODGETT, GARY KISHIMOTO, JOELLA MOLLOY, JOHN HAMILTON, ANITA NOBLE, JANET KAHLE, MARY RITTER, DAVID KEARNS, RAJUL KAZI, ROB DAVIS, WILLIAM HOYT, CRAIG BLANK,<br><br>        Defendants. | No. C-06-04029 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>**[Re Docket No. 13]** |

    Defendants Evergreen School District, Clifton Black, Rose Real, Robert Pruitt, Cheryl Harms, Claudia Blodgett, Gary Kishimoto, and Joella Molloy (the "School District defendants") move to dismiss plaintiffs' complaint for failure to state a claim. Plaintiffs filed opposition to the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT

School District defendants' motion. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court GRANTS defendants' motion to dismiss. Plaintiffs have twenty calendar days from the date of this order to amend their complaint.

## I. BACKGROUND

### A.  The Parties

Plaintiff Olivia Stalker ("Olivia") is a nine year old female child. According to the amended complaint ("AC"), she suffers from Attention Deficit Hyperactivity Disorder, Turrets Syndrome, Sensory Integration Disorder, Processing Deficit, and has deficits in communications skills, cognitive skills, and chronology, and memory impairments. AC ¶ 35. Olivia was a special needs child in the care of the Evergreen School District during the 2004 and 2005 school years. *Id.* ¶ 42. Plaintiff Shafer Watson ("Shafer") is a four year old male child who suffers from severe autism. *Id.* ¶ 34. Plaintiff Riley ("Riley") is a two year old male child. *Id.* ¶ 33. Plaintiff Renee Stalker ("Stalker") is the mother of Olivia, Shafer, and Riley. *Id.* ¶ 31. Plaintiff Tracy Watson ("Watson") is the father of Olivia, Shafer, and Riley, and is Stalker's spouse. *Id.*

Defendant Clifton Black ("Black") is the superintendent of the Evergreen School District located in Santa Clara County. *Id.* ¶ 12. Defendants Rose Real ("Real"), Robert Pruitt ("Pruitt"), Claudia Blodgett ("Blodgett"), Gary Kishimoto ("Kishimoto"), Joella Molloy ("Molloy"), and Cheryl Harms ("Harms") are employed by the Evergreen School District.[1] *Id.* ¶¶ 13-17, 30. Defendant Evergreen School District is a division of Santa Clara County. *Id.* ¶ 38.

### B.  Factual Allegations

Plaintiffs allege that during the 2004 and 2005 school years, staff from the Evergreen School District systematically abused Olivia who was in their care for special education services. *Id.* ¶ 42. On May 26, 2005 Real filed an allegedly false claim that Olivia had been sexually abused with the Santa Clara County Department of Family and Child Services ("DFCS"). *Id.* ¶¶ 43, 224. On June 7, 2005 DFCS contacted Watson and notified her that DFCS was investigating allegations that Olivia

---

[1]  The complaint does not allege any further facts regarding the roles of these defendants as employees of the Evergreen School District.

had been sexually abused. *Id.* 45. On June 24, 2005 DFCS cross-reported the sexual abuse report to the San Jose Police Department. On June 29, 2005 San Jose police officers removed Shafer and Riley from Watson's and Stalker's home, and the following day Olivia was taken into protective custody. *Id.* ¶¶ 47-49. Plaintiffs claim that interrogations conducted by the police at that time did not turn up any complaint of abuse or evidence for any charges. *Id.* ¶ 49.[2]

On July 11, 2005, by order of DFCS, Santa Clara Valley Medical Center conducted a SART exam[3] on Olivia with a positive result for chlamydia trachomatis. *Id.* ¶¶ 51, 53. Plaintiffs claim that the positive result for chlamydia is "a bogus, false positive" and that employees of Santa Clara Valley Medical Center failed to create a crime kit from the SART exam, as required.[4] *Id.* ¶ 53. On July 22, 2005, David Kearns, M.D., submitted a letter to the Santa Clara County Juvenile Dependency Court that Olivia's positive lab result (for chlamydia) was evidence of a recent infection. *Id.* ¶ 60. On July 26, 2005, Elizabeth Mailhot, M.D., submitted a letter to the Dependency Court supporting the validity of the chlamydia testing. *Id.* ¶ 62. Plaintiffs contend that Drs. Kearns and Mailihot were not qualified to make their respective statements and did not have sufficient information to make such statements to the Dependency Court. *Id.*

On July 15, 2005, pursuant to a warrant for the collection of bodily fluids from Watson and Stalker, including, if necessary, with the use of reasonable force, San Jose police officers detained Watson and Stalker. *Id.* ¶¶ 54-57. Plaintiffs allege that Watson and Stalker were "forced" to submit bodily fluid samples at Santa Clara Valley Medical Center. *Id.* ¶ 58. According to the complaint, the police arrested Stalker without stating the purpose of the arrest, interrogated her without reading her Miranda rights or allowing access to an attorney, ransacked Watson's and Stalker's vehicles, and smashed in the front door of their residence. *Id.* ¶¶ 55-57.

---

[2] The complaint does not indicate the person or persons who were the subject of the police interrogations.

[3] A SART exam refers to a "Suspected Abuse Response Team" exam. It is a medical and forensic exam for purposes of attending to injuries suffered by a sexual assault victim, collecting evidence, and diagnosing and treating sexually transmitted infections.

[4] Plaintiffs assert various other claims against the Santa Clara Valley Medical Center and its employees, the sufficiency of which is not before this court in the present motion.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                                        3

### C.     Allegations Against the School District defendants

Plaintiffs allege the following claims against the School District defendants: (1) statutory violation for false report of child abuse pursuant to Cal. Penal Code § 11172(a) against Real, Black, and the Evergreen School District; (2) negligence against Real, Black, the Evergreen School District, Pruitt, Harms, Kishimoto, and Blodgett; (3) intentional infliction of emotion distress against Real, Black, the Evergreen School District, Pruitt, Harms, Kishimoto, and Blodgett; (4) discrimination in violation of the Americans with Disability Act ("ADA") and section 504 of the Rehabilitation Act against Real, Black, the Evergreen School District, Pruitt, Harms, Kishimoto, and Blodgett; and (5) violation of 42 U.S.C. § 1983 "Civil Conspiracy–Oppressive Governmental Conduct Deprivation of Substantive Due Process Rights." *Id.* ¶¶ 223-59, 300-11.

Plaintiffs allege that Real's May 26, 2005 report to DFCS that Olivia had been sexually abused was "totally fabricated," and without reasonable suspicion or reasonable basis based on any evidence of sexual abuse. *Id.* ¶ 224. According to plaintiffs, it has been known to Real for "a period of at least three years" that Olivia places her hands between her legs in the area of her crotch and rocks back and forth. *Id.* ¶ 226. Plaintiffs allege that Olivia does this in public, including at school when teachers and other students are present. *Id.* Plaintiffs further contend that it was known that Watson and Stalker had addressed Olivia's behavior with her pediatrician, a child psychologist, and a child psychiatrist. Plaintiffs submit that Real knew that these professionals had concluded that Olivia's behavior was "a comforting action" during times of stress, "as a result of her developmental conditions." *Id.* Based on this knowledge, plaintiffs claim, Real knew her report of sexual abuse was false when made. *Id.* ¶ 227. Further, plaintiffs contend, Real made the claim in retaliation for Watson and Stalker having made "numerous claims" regarding the school district employees' (1) abusive treatment of Olivia while she was in their care, (2) failure to conduct a complete assessment of Olivia's educational needs, (3) failure to create an appropriate Individualized Education Plan for Olivia, and (4) failure to initiate a due process proceeding. *Id.* ¶ 225.

Plaintiffs claim the allegedly false claim of sexual abuse resulted because Black, as superintendent of the school district, failed "to ensure that a sufficient training program was in place to meet the requirements of [California] Penal Code section 11166.5" or failed to ensure adequate

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                                           4

supervision existed to ensure compliance with section 11166.5.[5] *Id.* ¶ 231.  Plaintiffs also allege generally that after making the purported false claim, the "District Employees"[6] engaged in certain testing and assessments of Olivia without parental consent, and that such testing and assessments led to "tainted misinformation" that resulted in additional accusations and the filing of a dependency petition pursuant to California Welfare & Institutions Code § 300.[7] *Id.* ¶¶ 233-38.  Plaintiffs further contend that the course of conduct engaged in by the "District Employees" after the purported false claim of sexual abuse was a breach of defendants' statutory duty under at least sections 200, 201, 220, 44265, 49422(e)(1), 49424, 56320, and 56324 of the California Education Code.  *See id.* ¶ 243.

On July 26, 2005, prior to the Dependency Court hearing, Real and Harms submitted statements about Olivia's parents, Watson and Stalker, to San Jose police officer William Hoyt and DFCS social worker Yazmina Letona in support of the initial report of sexual abuse regarding Olivia.  *Id.* ¶ 61.  Plaintiffs claim these statements were false.  *Id.*

## II.  ANALYSIS

### A.  Appointment of Guardian *Ad Litem*

The School District defendants argue that the complaint should be dismissed because the court has not yet appointed a guardian *ad litem* for plaintiffs Olivia, Shafer, and Riley, all of whom are minors under California law.  Fed. R. Civ. P. 17(c) provides:

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue

---

[5]  The court assumes references to code sections in the complaint, including to the Welfare & Institutions Code, the Penal Code, and the Education Code, refer to the California statutes.

[6]  Plaintiffs do not define which defendants comprise the "District Employees" as that term is used in the complaint.  Presumably, "District Employees" are those defendants identified in the complaint as employees of the Evergreen School District.

[7]  Section 300 of California's Welfare & Institutions Code sets forth circumstances under which a child comes "within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court." Cal. Welf. & Inst. Code § 300.  In particular, § 300(d) provides:

> The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse.

Cal. Welf. & Inst. Code § 300(d).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                                                                      5

> or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Prior to the reassignment of the present action from Judge Marilyn H. Patel to Judge Ronald M. Whyte, plaintiffs filed an *ex parte* application to appoint Pam Stalker, Olivia's, Shafer's, and Riley's aunt, as guardian *ad litem* for Olivia, Shafer, and Riley. *See* Docket No. 3. At the hearing, plaintiffs acknowledged that the request had not been re-filed since the case was reassigned. Because no guardian *ad litem* has been formally appointed for plaintiffs Olivia, Shafer, and Riley, the court dismisses without prejudice the action as to them. *See, e.g.*, *Johns v. County of San Diego*, 114 F.3d 874, 878 (9th Cir. 1997) (holding that dismissal of action against minor without a guardian *ad litem* should be dismissed without prejudice).

Plaintiffs are directed to re-file an application for appointment of guardian *ad litem*, accompanied by a written declaration that the proposed guardian *ad litem* is independent and would act in the best interests of the minors. To the extent the state court has appointed the proposed guardian *ad litem* as the guardian *ad litem* for these minors in the underlying state proceedings, this court would find such appointment persuasive on the issue of independence. Plaintiffs are also directed to serve the application and accompanying declarations upon defendants.

### B. Immunity of Mandatory Reporters

The School District defendants argue that plaintiffs' complaint should be dismissed with prejudice against them because they are all mandatory reporters under Cal. Penal Code § 11172 and, therefore, have absolute immunity from civil suit for (1) the initial report of sexual abuse and (2) the subsequent statements in support of that initial report. Cal. Penal Code § 11166 provides that mandated reporters must report knowledge or reasonable suspicion of child abuse or neglect:

> Except as provided in subdivision (d),[8] and in Section 11166.05,[9] a mandated reporter

---

[8] Subsection 11166(d) refers to an exception that applies to clergy members and is not applicable here.

[9] Cal. Penal Code § 11166.05 refers to a situation when a mandated reporter "may" make a report:

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                           6

> shall make a report to an agency specified in Section 11165.9 whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect.

Cal. Penal Code § 11166 (as amended September 29, 2006).

### 1. Mandatory Reporters

Plaintiffs argue that defendants' argument is without merit because (1) the complaint does not allege that defendants are "mandatory reporters" and (2) the invocation of immunity under § 11172 is an affirmative defense and need not be pled in a complaint. Plaintiffs' contention is without merit. Section 11172(a) provides:

> No mandated reporter shall be civilly or criminally liable for any report required or authorized by this article, and this immunity shall apply even if the mandated reporter acquired the knowledge or reasonable suspicion of child abuse or neglect outside of his or her professional capacity or outside the scope of his or her employment. Any other person reporting a known or suspected instance of child abuse or neglect shall not incur civil or criminal liability as a result of any report authorized by this article unless it can be proven that a false report was made and the person knew that the report was false or was made with reckless disregard of the truth or falsity of the report, and any person who makes a report of child abuse or neglect known to be false or with reckless disregard of the truth or falsity of the report is liable for any damages caused.

Cal. Penal Code § 11172(a). The immunity provided by § 11172 serves as a bar to civil suits based on mandated or authorized reporting. This bar is absolute for mandatory reporters:

> The legislative scheme is designed to encourage the reporting of child abuse to the greatest extent possible to prevent further abuse. Reporters are required to report child abuse promptly and they are subject to criminal prosecution if they fail to report as required. Accordingly, absolute immunity from liability for all reports is consistent with that scheme.

*Stecks v. Young*, 38 Cal. App. 4th 365, 373 (1995) (citations and internal quotations omitted). Immunity attaches once a report is made, *id.* at 375 (citing § 11172(a)), and whether immunity applies to a mandatory reporter is not dependent upon whether plaintiffs could prove that defendants made the report negligently or with knowledge of its falsity. *Id.* at 373. The court reasoned that the immunity for mandatory reporters applies even where the report is negligent or intentionally false

---

> Any mandated reporter who has knowledge of or who reasonably suspects that a child is suffering serious emotional damage or is at a substantial risk of suffering serious emotional damage, evidenced by states of being or behavior, including, but not limited to, severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, may make a report to an agency specified in Section 11165.9.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                               7

because "it is inconsistent to expose professionals to civil liability for failing to report and then expose them to liability where their reports prove false." *Id.* Similarly, the court rejected the plaintiffs' contention that whether the reported statements were relevant is a factual determination because, the court reasoned, such an approach would "simply invite protracted litigation . . . [which] would discourage reporting," and is "inconsistent with the legislative scheme and the Act's objectives." *Id.* at 374.

Applying the reasoning of *Stecks* here, it would be inconsistent with the legislative scheme and objectives to hold that the applicability of immunity under § 11172 is an affirmative defense to be proven by defendants. Such an approach would discourage reporting and invite protracted litigation. Indeed, the protections of § 11172 would be meaningless if immunity applied only after defendants are able to assert and prove its application in litigation. Thus, plaintiffs' claims fail unless they properly allege facts showing that defendants are not subject to § 11172 immunity. In addition, under § 11172, to the extent plaintiffs claim that defendants are *not* mandatory reporters, plaintiffs nevertheless must allege facts showing that § 11172 immunity does not apply because the report was false and the person making the report knew the report was false when made or made the report with reckless disregard of the truth or falsity. *Storch v. Silverman*, 186 Cal. App. 3d 671, 678 (1986) (citing Cal. Penal Code § 11172(a)). Plaintiffs have not done so.

Here, plaintiffs' allegations against defendants Black, Real, Pruitt, Blodgett, Kishimoto, Molloy, and Harms indicate that each of these defendants is an employee of the Evergreen School District. AC ¶¶ 12-17, 30, 38. For purposes of The Child Abuse and Neglect Reporting Act (the "Act"), Cal. Penal Code § 11164 *et seq.*, mandatory reporters include: (1) a teacher, (2) an instructional aide, (3) a teacher's aide or teacher's assistant employed by any public or private school, (4) a classified employee of any public school, (5) an administrative officer or supervisor of child welfare and attendance, or a certificated pupil personnel employee of any public or private school, and (6) any employee of a county office of education or the California Department of Education, whose duties bring the employee into contact with children on a regular basis. Cal. Penal Code § 11165.7. Other than indicating that the School District defendants are employees of the Evergreen School District, these allegations are vague as to each defendant's specific role or roles

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                      8

within the Evergreen School District. Without more, the court assumes from these allegations that defendants are mandatory reporters as defined in § 11165.7.

### 2. Reported Statements

At the hearing and in their briefs, plaintiffs also argue that certain of defendants' alleged statements fall outside the protections of § 11172. Specifically, plaintiffs argue that § 11172 immunity applies only to conduct prior to and up to the actual report of abuse itself. Plaintiffs cite to both *James W. v. Super. Ct.*, 17 Cal. App. 4th 246, 256 (1993) and *Stecks* in support of their argument that defendants' subsequent communications are not protected by § 11172.[10] However, plaintiffs' argument is unavailing for two reasons. First, California courts have specifically rejected the argument plaintiffs make. Second, neither *James W.* nor *Stecks* supports plaintiffs' contention that defendants' alleged actions after the initial report fall outside the protections of § 11172.

In *Ferraro v. Chadwick*, 221 Cal. App. 3d 86, 92 (1990), the court held that § 11172 "cloaks the mandated reporter with immunity for activity *after* the report of suspected child abuse mandated by section 11166, subdivision (a), is made." (emphasis in original). The court observed that § 11172(a) immunizes not only required reports, but also authorized reports. *Id.* The court also noted that the legislative history to the enactment of amendments in 1980 indicates that the provisions "are designed to foster cooperation between child protective agencies and other persons required to report." *Id.* at 93 (citation and quotations omitted). Specifically, the Act contemplates that information relevant to the incident of child abuse may be given to an investigator from a child protective agency and the district attorney subsequent to the initial report. *Id.* at 94 (citing Cal. Penal Code § 11167(b) and § 11166(g)). The court thus reasoned that the legislative text and legislative history support the conclusion that "communications by a mandated reporter to child protective or law enforcement agencies that are statutorily entitled to receive and investigate reports of child abuse are 'authorized' communications or reports under the Act." *Id.* at 95. Therefore, the court held, the communications to child protective and law enforcement agencies after the report of child abuse receive absolute immunity as "authorized" reports under § 11172(a). *Id.* The court also

---

[10] In their opposition brief, plaintiffs argued that *Stecks* was factually distinguishable from the present action. However, in oral argument, plaintiffs cited to *Stecks* to support their argument that post-reporting activities are not protected under § 11172.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                                                                  9

1  noted that absolute immunity applied whether the communications were initiated by the mandatory
2  reporter or made in response to inquiries by the agencies. *Id.*

3  Here, plaintiffs allege that after Real's report of sexual abuse, and just prior to the
4  Dependency Court hearing, Real and Harms submitted statements about Olivia's parents, Watson
5  and Stalker, to San Jose police officer William Hoyt and DFCS social worker Yazmina Letona in
6  support of the initial report of sexual abuse regarding Olivia. AC ¶ 61. As statements made to a
7  child protective agency (DFCS) or law enforcement (San Jose Police Department), these subsequent
8  communications in support of the initial report fall within "authorized" reports as defined by the
9  *Ferraro* court. Therefore, these communications are subject to absolute immunity under § 11172(a).

10  Neither *James W.* nor *Stecks* supports a conclusion that the alleged post-report actions on the
11  part of defendants fall outside of § 11172. The circumstances and the court's holding in *James*
12  *W.* are distinguishable from the facts here. In *James W.*, a young girl was examined by hospital staff
13  who concluded that she had been raped and sodomized. 17 Cal. App. 4th at 248. The girl reported
14  that a man had entered her bedroom through her window and hurt her. Hospital staff reported the
15  incident. Later that day, a hospital worker and a detective accused the girl's father of the
16  molestation. The girl was placed into temporary foster care. During the next two and a half years
17  the girl remained in foster care and the girl and her family saw a family counselor. The foster parent
18  and family counselor allegedly repeatedly pressured the girl to accuse her father despite the girl's
19  firm insistence that her father did not attack her and that a man had entered her bedroom and
20  attacked her. In addition, the foster parent and counselor knew that a registered sex offender had
21  been positively identified as having attacked a four year old girl just across the street. Nevertheless,
22  the counselor continued to pressure the girl, including telling her that the only way for her to return
23  home was to accuse her father. *Id.* at 248-50. A year later, the girl accused her father. However,
24  subsequent DNA testing exculpated the father and indicated that the registered sex offender who had
25  attacked another girl in the neighborhood was the probable perpetrator. *Id.* at 251. In addition,
26  during that time, the mother tried to kill herself and was institutionalized for three months as a result
27  of sessions in which the counselor advised the mother to treat the father as if he were dead, accused
28

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                       10

the mother in front of her young son of participating in the girl's rape, and told the girl without first obtaining consent that her mother was raped by her own father. *Id.*

The court held that the statements and conduct of the counselor and foster parent were distinguishable from the immunized post-reporting activities in *Ferraro*. Specifically, the court noted that the obvious distinction is that the post-reporting activities in *Ferraro* were "simply restatements or republications of the initial report of suspected child abuse" and "[i]t would be anomalous to construe the Act as absolutely immunizing the 'required' initial report and yet construe later republications of the same statements as exposing the reporter to civil liability." *Id.* at 255. By contrast, the court noted, neither the counselor nor foster parent identified or reported the incident of child abuse in the first instance, but merely came in after the fact. They "voluntarily assumed roles of those who, having received the report and determined the identity of the perpetrator, search for corroboration and/or attempt to pressure a witness to get a conviction." *Id.* at 256-57. Thus, the court held, neither the counselor nor foster parent were acting as reporters and, therefore, may not take advantage of the immunity accorded reporters. *Id.* By contrast, here, defendants were the initial reporters of the alleged abuse.[11] Defendants' post-reporting statements were simply republications made in support of the initial report. Therefore, as in *Ferraro*, the post-reporting statements fall within the protections of § 11172(a).

Moreover, subsequent case law has noted the narrowness of the holding in *James W.* In *Stecks*, 38 Cal. App. 4th at 373, the court described the holding in *James W.* as "[o]ur court found only that section 11172 . . . does not apply to activities that continue more than two years after the initial report of abuse by parties who are not acting as reporters." (internal quotations and citation omitted).

Plaintiffs' reliance upon *Stecks* is similarly unavailing. In *Stecks*, a family counselor made a report to child protective services based upon the statements of a patient suffering from

---

[11] In their opposing brief to defendants' motion, plaintiffs argue that the School District defendants came in "after the fact," similar to the defendants in *James W.* However, because, as noted earlier, the complaint does not set forth factual allegations concerning the role of each of the individual School District defendants prior to and subsequent to the report, the allegations are insufficient to support that any of the School District defendants "came in after the fact." The sufficiency of the allegations concerning defendants' post-reporting conduct is addressed *infra*.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                        11

1  schizophrenia and multiple personality disorder that her niece and nephew might be victims of abuse
2  and molestation by her parents. *Id.* at 369-70.  The court held that the report, although potentially
3  untimely, still fell within the immunity provided by § 11172.  The court did, however, express
4  concerns that the facts of that case "press[] the outer limits of immunity" because the report was not
5  made upon personal observation or interviews of the alleged victims, or derived from other trained
6  professionals' observations or interviews. *Id.* at 375.  Nevertheless, the court held that absolute
7  immunity applied and deferred to the Legislature as to any different application of § 11172. *See id.*
8  at 376 ("In circumstances where the mandated reporter is not drawing upon personal professional
9  assessments of the victim or abuser or is not relying upon other trained professionals who have made
10 such assessments, we submit that the application of absolute immunity warrants further reflection by
11 the Legislature.").

### 3. Conduct

13  Plaintiffs also allege that subsequent to the report of sexual abuse, the "District Employees"
14 engaged in certain *conduct* that falls outside the protections of § 11172.  Neither party squarely
15 addresses whether post-reporting conduct is immunized by § 11172.  Defendants cite *Ferraro* for the
16 proposition that the alleged post-reporting tests and assessments performed to corroborate the initial
17 report are immunized.  However, the holding in *Ferraro* discussed only post-reporting
18 communications.  Nevertheless, under California law, the protections of § 11172 extends not only to
19 communications, but also to conduct leading up to the act of reporting. *See Krikorian v. Barry*, 196
20 Cal. App. 3d 1211, 1223 (1987) ("[W]e conclude that section 11172 was intended to provide
21 absolute immunity to professionals for conduct giving rise to the obligation to report, such as the
22 collection of data, or the observation, examination, or treatment of the suspected victim or
23 perpetrator of child abuse, performed in a professional capacity or within the scope of employment,
24 as well as for the act of reporting.").  Although *Krikorian* also does not directly address post-
25 reporting conduct, plaintiffs have not cited any California case law that holds post-reporting conduct
26 is not immunized.  The court, thus, does not find support to so narrow the protections of § 11172.
27 *See Stecks*, 38 Cal. App. 4th at 375 ("Without exception, our appellate courts have concluded that
28

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                                                              12

1  immunity is a key ingredient in maintaining the Act's integrity and thus have rejected efforts aimed
2  at narrowing its protection.").

3       In any event, plaintiffs' allegations of such purported post-reporting conduct is insufficient.
4  Plaintiffs allege that defendants engaged in certain testing and assessments of Olivia without
5  parental consent, that such testing and assessment were performed to corroborate defendants' false
6  claims rather than to further the educational needs of Olivia, and that such testing and assessments
7  led to "tainted misinformation" that resulted in additional accusations and the filing of a dependency
8  petition pursuant to California Welfare & Institutions Code § 300.  *Id.* ¶¶ 232-239.  These
9  allegations do not indicate the specific conduct by any particular defendant and how such conduct
10 resulted in any further reports or "additional accusations" by defendants.

11     **C.**    **Leave to Amend**

12      Plaintiffs request leave to amend should the court find their pleadings insufficient.  Fed. R.
13 Civ. P. 15(a)'s edict that "leave shall be freely given when justice so requires" is "to be applied with
14 extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)
15 (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citations
16 omitted)).  However, "a district court need not grant leave to amend where the amendment: (1)
17 prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or
18 (4) is futile."  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 2006 WL 709199, *3 (9th Cir. 2006)
19 (citations omitted) (certified for publication); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

20      Defendants seek dismissal with prejudice.  The court agrees that dismissal with prejudice is
21 appropriate if plaintiffs' claims are barred by § 11172(a).  *See e.g., Ferraro*, 221 Cal. App. 3d at 86
22 (affirming trial court's decision to sustain defendant's demurrer to the complaint without leave to
23 amend and dismiss the action on the basis that plaintiffs' claims are barred by § 11172's absolute
24 immunity from civil liability to medical providers involved in the reporting of suspected child
25 abuse); *Krikorian v. Barry*, 196 Cal. App. 3d 1211, 1214, 1223 (1987) (affirming trial court's order
26 sustaining demurrer without leave to amend on the basis that § 11172 barred claims).  However, the
27 court finds that, based on the face of the complaint, it is not clear whether defendants are mandatory
28 reporters and whether any alleged statements fall outside of § 11172(a).  Although plaintiffs'

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS—No. C-06-04029 RMW
SPT                              13

allegations are insufficient to sustain their claims against the School District defendants, the court cannot conclude, at this juncture, that the action should be dismissed with prejudice. Plaintiffs are granted leave to amend to adequately plead facts showing that (1) defendants are not mandatory reporters within the meaning of The Child Abuse and Neglect Reporting Act, Cal. Penal Code § 11164 *et seq.* and (2) specific statements or conduct by defendants fall outside the purview of the immunity provided by § 11172(a), including as interpreted by the *Ferraro* court.[12] Absent such pleadings, plaintiffs' complaint will be dismissed with prejudice as to the School District defendants.

### III. ORDER

For the foregoing reasons, the court GRANTS defendants' motion to dismiss. Plaintiffs have twenty calendar days from the date of this order to amend their complaint.

DATED:  1/3/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

---

[12] This order does not address the merits of plaintiffs' complaint in any other respect.

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Peter J. Johnsonjjlaw2@earthlink.net

**Counsel for Defendants:**

Jacquelyn Kimmet Wilsonjkw@swr-law.com
Clifford S. Greenbergcao.main@ci.sj.ca.us
Melissa R. Kiniyaloctsmelissa.kiniyalocts@cco.co.scl.ca.us

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   1/3/07SPT
**Chambers of Judge Whyte**