1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**E-filed on:** ___5/20/10___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

TRACY WATSON, RENEE STALKER, PAM STALKER as Guardian *Ad Litem* for OLIVIA STALKER, SHAFER WATSON and RILEY WATSON, minors,

                    Plaintiffs,

          v.

COUNTY OF SANTA CLARA, *et al.,*

                    Defendants.

No. C-06-04029 RMW

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**[Re Docket Nos. 174, 177,  207, 209, 230, 233, 236, 300 and 307]**

          On December 4, 2009, the court heard nine motions for summary judgment.  Having considered the papers submitted by the parties and the arguments of counsel at the hearing, and for good cause appearing, the motions are granted in part and denied in part as set forth below.

          Familiarity with the underlying facts and claims is presumed.  This action generally arises out of the removal of three minor children from their parents' custody.  The state court conducted dependency proceedings and determined that the children should be removed from their parents' custody and placed in the care of a guardian.  The court of appeals affirmed.  The California Supreme Court denied review.  Eventually, the children were reunited with their parents.  In the mean time, plaintiffs filed this action asserting various constitutional violations and state law torts against a multitude of defendants arising out of the removal of the three minor children from their

parents' custody, the conduct of the state court dependency proceedings, and the length and circumstances of supervised visitation prior to the reunification of the children and their parents. All of the defendants have sought summary judgment on the claims asserted against them.

### A.    Unopposed Motions and Withdrawn Claims

Through the parties' papers, it became clear that certain motions are unopposed and certain claims are no longer being pursued by plaintiffs. At the hearing on the motions, plaintiffs' counsel confirmed that plaintiffs are no longer pursuing certain claims and defendants. Accordingly, the court orders as follows:

1)    Defendant Singh's motion for summary judgment (Docket No. 174) is granted.

2)    Defendants Letona and Hoyt's motions for summary judgment (Docket Nos. 233 and 307, respectively) on plaintiffs' twenty-fourth and twenty-fifth claims for invasion of privacy are granted.

3)    Defendant Norma Sparks' motion for summary judgment (Docket No. 233) is granted.

4)    Defendants City of San Jose and Hoyt's motion for summary judgment (Docket No. 307) relating to plaintiff Renee Stalker's claims arising from her detention, arrest and interrogation is granted. This includes the seventh, ninth and fourteenth claims for relief.

5)    Defendant County of Santa Clara's motion for summary judgment (Docket No. 236) relating to plaintiffs' claims brought under 42 U.S.C. §1983 arising from the County's alleged policies of conducting harmful interviews of children, of social workers' refusing to meet with parents who insist on having counsel present, of sharing confidential information regarding juvenile proceedings, and of failing to adequately represent the interests of minor clients is granted.

6)    Defendants City of San Jose, Hoyt, and Tran's motions for summary judgment (Docket Nos. 307 and 230, respectively) on plaintiffs' tenth claim for relief arising out of the alleged illegal search of plaintiffs' home and unlawful seizure of records are granted.

7)    Defendant Pruitt's motion for summary judgment (Docket No. 300) is granted.

8)    Defendant Noble's motion for summary judgment (Docket No. 207) is granted.

The remaining claims and issues presented by the motions are addressed below.

**United States District Court**
For the Northern District of California

**B.**   **Contested Motions**

**1**.   **Collateral Estoppel**

Several issues overlap many of the contested motions.  Various defendants seek summary judgment on grounds of res judicata, collateral estoppel, or the *Rooker-Feldman* doctrine, all in essence contending that plaintiffs cannot relitigate issues in this lawsuit that were tried and decided in the state court juvenile proceedings.  The state court proceedings involved a lengthy evidentiary proceeding where the parties were represented by counsel, witnesses testified subject to cross-examination, the issues were vigorously contested and were ultimately decided by the state court.  Plaintiffs' appeals to the state court of appeal were unsuccessful.  Review by the California Supreme Court was denied.  The court has read the parties' briefs and determines that res judicata (i.e., claim preclusion) does not apply because the claims plaintiffs are asserting are not ones asserted in state court.  Similarly, the *Rooker-Feldman* doctrine does not apply because the plaintiffs are not seeking to overturn a state court judgment.  *Heinrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (*Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments).  Nevertheless, the doctrine of collateral estoppel – issue preclusion – does apply.

The Full Faith and Credit Act, 28 U.S.C. §1738, requires this court to give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was entered.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Kay v. City of Rancho Palos Verdes*, 540 F.3d 803, 808 (9th Cir. 2007).  Collateral estoppel, or issue preclusion, precludes the relitigation of issues that were actually tried and decided in prior proceedings.  *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990).  Collateral estoppel applies when the issue sought to be precluded is identical to the issue decided in the former proceeding, the issue was actually litigated in the former proceeding, the issue was necessarily decided in the former proceeding, the decision in the former proceeding is final and on the merits, and the party against whom preclusion is sought is the same as or in privity with the party to the former proceeding.  *Id.* The doctrine has been applied to bar federal lawsuits involving issues raised, litigated and determined in state court juvenile proceedings.  *Jensen v. Foley*, 295 F.3d 746 (7th Cir. 2002); *cf Anderson-*

**United States District Court**
For the Northern District of California

1   *Francois v. County of Sonoma*, 2009 WL 1458240 (N.D. Cal. May 22, 2009) (recognizing that

2   collateral estoppel could apply to preclude litigation of continued detention of children after state

3   court's jurisdictional trial, but did not apply to prevent claim based upon initial warrantless seizure of

4   children).  Collateral estoppel applies here.

5          Plaintiffs argue that collateral estoppel does not apply, relying on *Lucido* and *People v.*

6   *Perciful*, 9 Cal. App. 4th 1457 (1992).  Both cases are distinguishable on the ground that the

7   subsequent action involved a criminal prosecution, with significantly different public policies at

8   issue, than a subsequent civil proceeding.  Plaintiffs' primary argument is that the doctrine does not

9   apply because they did not have a full and fair opportunity to litigate the issues in the state court.[1]

10  Plaintiffs rely on *Durkin v. Shea & Gould*, 92 F.3d 1510 (9th Cir. 1996), and *Luben Industries v.*

11  *United States*, 707 F.2d 1037, 1039 (9th Cir. 1983), for the proposition that the court has discretion

12  not to apply the doctrine of collateral estoppel when the parties against whom it is sought to be

13  applied did not have a full and fair opportunity to litigate the issue.  The basis for plaintiffs' argument

14  is the assertion that defendants committed perjury, submitted false documents, and concealed material

15  facts and evidence in the dependency proceedings.  Plaintiffs' strident advocacy is not supported by

16  their evidentiary showing, however, and plaintiffs' evidentiary showing is insufficient to establish that

17  any perjury was committed on any material fact, that any false documents or false evidence was

18  submitted to the state court, or that any material evidence was withheld from the state court.  More

19  importantly, the California Supreme Court has noted that collateral estoppel prohibits the collateral

20  attack on a judgment on grounds that evidence was falsified, destroyed or suppressed.  *Cedars-Sinai*

21  *Medical Center v. Superior Court*, 18 Cal.4th 1, 10 (1998) (discussing case law forbidding collateral

22  attack on a judgment on the ground that the evidence was falsified, concealed or suppressed), citing

23  *Jorgensen v. Jorgensen*, 32 Cal.2d 13, 18-19 (1948); *Adams v. Martin*, 3 Cal.2d 246, 248-49 (1935),

24

25  ───────────────

26  [1]  Plaintiffs also argue that the doctrine does not apply because the privity requirement is not met.
    The court disagrees – all of the plaintiffs were parties in the juvenile proceedings.  Similarly,

27  plaintiffs suggest that collateral estoppel does not apply because there was no right to a jury trial in
    the juvenile court proceedings.  The lack of a jury right in the prior proceedings does not bar

28  application of collateral estoppel.  *Roos v. Red*, 130 Cal. App. 4th 870, 880-82 (2005).

**United States District Court**
For the Northern District of California

1   and *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1175-76 (1983).  Plaintiffs' contention that

2   defendants committed perjury, fabricated evidence, or concealed material facts thus provides no basis

3   to preclude application of collateral estoppel here.

4        Plaintiffs place particular emphasis on defendants' failure to disclose the videotape of the

5   initial SART exam of Olivia, which plaintiffs argue rendered the underlying proceedings so unfair as

6   to preclude the doctrine of collateral estoppel from applying.  Plaintiffs are mistaken.  New evidence

7   does not preclude application of collateral estoppel where the evidence does not establish a

8   previously undiscovered legal theory or a change the parties' legal rights.  *Khanna v. State Bar of*

9   *California*, 308 Fed. Appx. 176 (9th Cir. 2008), citing *Roos v. Red*, 130 Cal. App. 4th 870, 888

10  (2005).  In *Roos*, the new evidence was an eye witness to the accident who supported the driver's

11  version of events, yet the court held that this new evidence did not preclude collateral estoppel

12  because the new evidence went to the *weight* of the evidence supporting plaintiffs' version of the case

13  and did not establish a previously undiscovered theory nor did it result in a change in the parties' legal

14  rights.  *Id.*  The court noted that "'[a]ny exception to collateral estoppel cannot be grounded on an

15  alleged discovery of more persuasive evidence.  Otherwise there would be no end to the litigation.'"

16  *Id.* quoting *Evans v. Celotex*, 194 Cal. App. 3d 741, 748 (1987); s*ee also Cedars-Sinai Medical*

17  *Center*, 18 Cal.4th at 10 (discussing case law forbidding collateral attack on a judgment on the

18  ground that the evidence was falsified, concealed or suppressed).  The same holds true here: plaintiffs

19  argue that the SART videotape bolsters their contention that the person being examined was not

20  Olivia, but plaintiffs asserted this same argument (and others) in the juvenile proceedings.  Thus,

21  although the SART videotape was "new evidence" in the sense that it had not been disclosed until

22  after the state proceedings were done, it only goes to the weight of the evidence in the underlying

23  trial.  The failure to disclose the SART videotape did not deprive plaintiffs of a full and fair

24  opportunity to litigate the issues concerning Olivia's examination and collateral estoppel precludes

25  them from doing so here.  Litigation must come to an end.[2]

26

27  ───────────────

[2]  The situation here must be distinguished from the cases where both legal and equitable issues are
28  involved.  In such cases, the law requires the legal issues to be tried first.  Here, however, we are
dealing with a fully litigated separate prior action which was tried by the court.

1    Ultimately, plaintiffs' argument that the state court trial and appellate proceedings did not

2    offer them a full and fair opportunity to litigate these issues is without merit.  The state court

3    conducted a lengthy, contested, jurisdictional hearing consuming 19 trial days, involving 27

4    witnesses and 85 trial exhibits.  (*In re Olivia S. et al.*, Cal. Ct. App. Case No. H029972 (Sixth

5    Appellate District Sep. 21, 2008), County's Request for Judicial Notice, Exh. F at 3).  The California

6    state court has already conducted a trial on the issues plaintiffs seek to raise here, the decision is final

7    and on the merits, has been affirmed on appeal, and review has been denied by the state supreme

8    court.  In the end, the trial court found that Olivia had been sexually abused and that she and her

9    siblings were at substantial risk such that removal from their parents' custody was appropriate.  The

10   issues underlying that decision cannot be relitigated here

11   Accordingly, the court finds that collateral estoppel applies to all of the issues actually tried in

12   the state court juvenile dependency proceedings and precludes plaintiffs from relitigating any of those

13   issues here.  As a result, even though plaintiffs' civil rights and state tort claims themselves were not

14   litigated in the prior proceeding, such that res judicata does not apply, the claims are nevertheless

15   barred to the extent they depend upon proof of issues that were decided adverse to plaintiffs in that

16   earlier proceeding.  Therefore, defendants are entitled to summary judgment on plaintiffs' claims

17   arising from the detention of the children (fifth and sixth claims for relief); the claims arising from

18   the placement of the children in a Spanish-speaking foster home (nineteenth claim for relief); and the

19   constitutional claims relating to the alleged corruption of the court process (twenty-third claim for

20   relief).  Defendants are also entitled to summary judgment on all claims based upon allegations of

21   mishandling the biological specimen of Olivia, the validity or accuracy of the chlamydia test results,

22   and the failure to disclose the SART videotape.

23   **2.    Motion for Summary Judgment by School District Defendants
           (Docket 300)**

24

25   Defendants Real and Harms are the remaining defendants affiliated with the Evergreen School

     District.  They are teachers who were involved in making the report of suspected child abuse  to

26   Child Protective Services and who testified during the underlying state court proceedings regarding

27   their observations of Olivia's masturbatory behavior, among other things.  The only remaining claim

28

United States District Court
For the Northern District of California

1  against them is the twenty-third claim for relief under 42 U.S.C. §1983 for conspiracy to deprive

2  plaintiffs of substantive due process.  Defendants move for summary judgment contending that

3  plaintiffs cannot offer evidence of any agreement to support the conspiracy claim, that the claim was

4  fully litigated and rejected in the underlying state court proceedings, and that the defendants have

5  qualified immunity under the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C.

6  §5106(g), for having made a mandatory report of suspected sexual abuse of a child.

7  　　　At the hearing, through arguments of plaintiffs' counsel, it became clear that the only claims

8  being pursued against Real and Harms relate to their testimony given during the state court

9  proceedings, which plaintiffs argue is materially different from their deposition testimony in this

10  federal action.  Plaintiffs claim this alleged change in testimony supports plaintiffs' conspiracy theory.

11  Plaintiffs are not asserting a claim for a false report of suspected sexual abuse; their claim is limited

12  to the witnesses' testimony.

13  　　　Each of the bases for Real and Harms' motion is well-founded.  Plaintiffs have failed to point

14  to evidence upon which a reasonable jury could find in their favor on the existence of any conspiracy

15  to deprive plaintiffs of their constitutional rights, specifically, plaintiffs have failed to identify any

16  evidence of any agreement by these defendants.  *See Olsen v. Idaho State Board of Medicine*, 363

17  F.3d 916, 929 (9th Cir. 2004) (to even state a claim involving a conspiracy, plaintiff must allege

18  specific facts showing an agreement among defendants to violate plaintiff's civil rights).  Moreover,

19  the litigation privilege protects a witness' testimony.  *Ramalingam v. Thompson*, 151 Cal. App. 4th

20  491 (2007).  Finally, the substantive issue (suspected sexual abuse of Olivia) was fully litigated and

21  decided in state court and the state court's judgment cannot be collaterally attacked here.  Defendants'

22  motion for summary judgment is therefore granted.

23  　　　　　**3**.　　**Motion for Summary Judgment by Social Worker Defendants Ramirez**
　　　　　　　　　**and Tran (Docket 230)**

24

25  　　　　　　**a.  Ramirez**

26  　　　Defendant Ramirez had little involvement in the underlying facts.  She was the initial social

27  worker assigned to investigate the complaint of suspected sexual abuse.  She went on vacation before

28  any meeting with plaintiffs was held and before the minors were removed from the home.  The only

United States District Court
For the Northern District of California

1 claim asserted against her is the twenty-third claim for conspiracy to deprive plaintiffs of their rights.

2 As was the case with the school district defendants, plaintiffs have failed to come forward with any

3 evidence of an agreement involving defendant Ramirez.  Her motion for summary judgment is

4 granted.

5                                              **b.      Tran**

6              Defendant Tran is the social worker to whom the investigation was assigned after Ramirez

7 went on vacation.  Tran allegedly participated in the removal of the two minor siblings, Shafer and

8 Riley, from plaintiffs' home.  The remaining claims asserted against Tran are the first claim for relief

9 for violation of plaintiffs' Fourth Amendment rights arising out of the allegedly unlawful entry into

10 plaintiffs' home; the second and eleventh claims for relief relating to the allegedly unlawful seizure of

11 Shafer and Riley; and the fourth claim for relief under Section 1983 for the violation of plaintiffs'

12 Fourteenth Amendment rights to familial association.

13                                      **i.      Unlawful entry claim**

14              Defendant Tran's motion for summary judgment includes a request for summary judgment on

15 plaintiffs' constitutional claim for the unlawful entry into their home.  Plaintiffs' written opposition

16 does not address this aspect of the motion.  Plaintiffs contend that defendant Tran did not raise the

17 issue in his motion.  Plaintiffs are mistaken.  While most of Tran's brief addresses the claims relating

18 to the removal of the children from the home and taking them into protective custody, Tran does seek

19 summary judgment on the unlawful entry claim, albeit obliquely.  Motion at 18:6-8 ("As such, Tran is

20 entitled to qualified immunity on all claims asserted against him in the Fourth Amended Complaint:

21 the first claim pursuant to 42 U.S.C. §1983 for alleged violations of Plaintiffs' Fourth Amendment

22 rights for the alleged unlawful entry into Plaintiffs' home. . . .").  The brief also cites evidence in

23 support of the assertion that Tran did not initially enter the home, but did so later after Officer Hoyt

24 had determined it to be safe.  At the hearing, defendant's counsel asserted that Tran did not enter the

25 home until the police officers authorized him to enter and investigate, and, therefore, Tran has

26 qualified immunity because he  reasonably relied in good faith on the directions of the police officer.

27 Counsel does not cite any evidence, however, that the officers instructed or directed Tran to enter.

28

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                                    8

1   Based on the present record and state of the briefing, the court cannot grant summary judgment on the

2   unlawful entry claim.

3                                   **ii.      Removal of Riley and Shafer**

4          Riley and Shafer were removed from their home without a warrant.  Tran seeks summary

5   judgment on the basis that it is "undisputed" that Officer Blank, and not Tran, was the one who

6   decided to take the children into custody.  Tran also seeks summary judgment on the basis that he has

7   qualified immunity, arguing that it was reasonable for him to rely on Sergeant Blank's investigation

8   and assessment that the boys should be taken into protective custody.

9          However, facts are in dispute regarding the decision to take the children into protective

10  custody.  The parties' briefing and evidentiary submissions are inadequate to enable the court to grant

11  summary judgment on the issue of qualified immunity.  Exigent circumstances may excuse the

12  requirement for obtaining a warrant.  In *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th

13  Cir. 2007), the Ninth Circuit noted:

14          The Fourteenth Amendment guarantees that parents will not be separated from their
            children without due process of law except in emergencies.  Officials violate this right
15          if they remove a child from the home absent information at the time of the seizure that
            establishes reasonable cause to believe that the child is in imminent danger of serious
16          bodily injury and that the scope of the intrusion is reasonably necessary to avert that
            specific injury.  The Fourth Amendment also protects children from removal from
17          their homes absent such a showing.  Officials, including social workers, who remove a
            child from its home without a warrant must have reasonable cause to believe that the
18          child is likely to experience serious bodily harm in the time that would be required to
            obtain a warrant.

19
20  487 F.3d at 1294 (internal quotations and citations omitted).  Moreover, California law authorizes a

21  peace officer to take a child into protective custody without a warrant when the officer has reasonable

22  cause to believe that the minor has an immediate need for medical care, or is in immediate danger of

23  physical or sexual abuse, or the physical environment or the fact that the child is left unattended

24  poses an immediate threat to the child's health or safety.  (Cal. Welf. & Inst. Code §305.)

25  Additionally, a peace officer may take a child into protective custody without a warrant if it

26  reasonably appears to the officer that a person is likely to conceal the child, flee the jurisdiction with

27  the child, or by flight or concealment, evade the authority of the court.  Cal. Penal Code §279.6(a)(1).

28

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                                    9

1    Defendant Tran, however, has not met his burden of coming forward with evidence to

2    establish that any exigency applied such that summary judgment is appropriate.  The motion for

3    summary judgment is denied.

4              **4.    Motion for Summary Judgment by Social Worker Defendants Letona,
                       Burgan and Castaldi**

5

6    Defendant Letona was the social worker assigned after the children were taken into

7    protective custody; Burgan was her supervisor.  Defendant Castaldi is another social worker

8    supervisor.  These social worker defendants seek summary judgment on the basis that plaintiffs'

9    claims are barred by res judicata and collateral estoppel, their qualified immunity from the federal

10   civil rights claims, and their immunity under California Civil Code Section 47 and Government Code

     Sections 821.6 and 820.2 from state law claims for the intentional infliction of emotional distress.

11   The following claims remain asserted against defendant Letona:

12
         a.    fifth claim for relief pursuant to Section 1983 for the unlawful detainment of the
13             children;

14       b.    sixth claim for relief pursuant to Section 1983 for the alleged conspiracy to detain the
               children;
15
         c.    eighth claim for relief pursuant to Section 1983 and Twelfth Claim for Relief under
16             the California Constitution arising out of subjecting Shafer and Riley to medical
               procedures, urethral swabs that had been ordered by the court but with the parents
17             present;

18       d.    fifteenth and nineteenth claims for relief for the intentional infliction of emotional
               distress arising out of the conspiracy to deprive the plaintiffs of their 14th Amendment
19             rights to familial association and the placement of the children in a Spanish speaking
               foster home, respectively; and,
20
         e     twenty-third claim for relief pursuant to Section 1983 for conspiracy to deprive
21             plaintiffs of their due process rights by manipulating the state court proceedings
               through misrepresentations, destruction of evidence and interference with compliance
22             with court orders.

23   The sixth, fifteenth, nineteenth and twenty-third claims for relief – conspiracy to detain children,

24   infliction of emotional distress, and conspiracy to deprive plaintiffs of due process rights, respectively

25   – are also asserted against defendants Castaldi and Burgan.

26              **a.    Collateral Estoppel**

27   As discussed above, many of the issues underlying plaintiffs' claims have already been

28   litigated and collateral estoppel prevents plaintiffs from litigating them again in this action.

United States District Court
For the Northern District of California

1  Defendants are entitled to summary judgment on plaintiffs' claims arising from the detention of the

2  children (fifth and sixth claims for relief); the claims arising from the placement of the children in a

3  Spanish speaking foster home (nineteenth claim for relief); and the constitutional claims relating to

4  the alleged corruption of the court process (twenty-third claim for relief).

5                    **b.    Qualified Immunity**

6           Defendant Letona also seeks summary judgment on the basis of qualified immunity.  She first

7  seeks summary judgment on plaintiffs' constitutional claims arising out of her participation in

8  transporting Shafer and Riley to the medical center so that urethral cultures could be obtained.

9  Plaintiffs argue that the parents had a right to be present at this procedure under state law and under

10  the court order authorizing the procedure, and that their right of familial association was violated

11  when the tests occurred in their absence.  Letona's brief asserts that the parents prevented the urethral

12  cultures from being taken in the first procedure, which then required a second attempt.  Plaintiffs'

13  opposition does not deny that the parents were present during the first medical procedure and

14  prevented the urethral cultures from being taken during the first procedure,[3] notwithstanding the court

15  order directing that urethral cultures be taken.  Thus, it appears undisputed that the state court ordered

16  the urethral culture to be taken, that the parents were authorized to be present, that Ritter informed

17  Letona that the parents had interfered with the urethral culture and requested Letona to return the

18  children for a second medical procedure without the parents being present, and that Letona did so.

19

20  _____

21  [3]  The transcript evidence cited by defendants does not directly establish that the parents interfered
    with the urethral culture.  Defendants do, however, cite Letona's subsequent report to the state court:

22

23           On 9/20/05, this worker received information that when the mother and the father
         attended the exam of Riley and Shafer on Tuesday, 9/20/05, they informed Mary

24       Ritter that they did not want a urethral culture done on either of the boys.  Mary
         Ritter stated that although the Court order was specific to urethral and anal cultures,
         she was not going to argue with the parents, and as a consequence she did not

25       perform the urethral culture on either of the boys.  Mary Ritter stated that she does
         believe that it is a good idea to obtain the urethral culture, but her role is not to argue

26       with the parents.  Mary Ritter stated that if the children were brought back for the
         purposes of obtaining the urethral culture she would not like the parents present

27       because they interfered with the drawing of the first cultures.

28  Defendants' Request for Judicial Notice, Exh. R.

**United States District Court**
For the Northern District of California

1    *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000), recognizes that parents have the

2    constitutional right to be present when their children receive medical attention and that children have

3    a corresponding right to have parents present when undergoing medical procedures.  In *Wallis*, the

4    children had been removed by the police based on a report from a mentally ill relative who stated that

5    the children's father was going to sacrifice the son in an upcoming Satanic ritual.  The children were

6    also taken to a hospital for an evidentiary physical examination, in part to determine whether the

7    children had been sexually abused.  No warrant had been obtained; the parents were not informed and

8    were not given the opportunity to object to the examination or to be present during it.  In the resulting

9    civil rights lawsuit, the Ninth Circuit upheld the denial of the officers' motion for summary judgment,

10   affirming that parents and children have a liberty interest in familial association when the children are

11   receiving medical treatment.  The court specifically noted that "parents have a right arising from the

12   liberty interest in family association to be with their children while the are receiving medical attention

13   (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all

14   or a part of the medical procedure is being conducted)."  *Id.*  Thus, the law has been clear, at least

15   since 2000 when the *Wallis* opinion issued, that parents have a constitutional right to be present when

16   their children are receiving medical attention and children have the corresponding constitutional right

17   to have their parents present at such time.  Notably, the state court's order requiring the urethral

18   culture also authorized the parents to be present.  Thus, the parents' and children's right to be present

19   during the medical procedure was well-established.

20       Defendant does not address *Wallis*, and in reply argues that because the state court ordered a

21   urethral culture and the parents' interference prevented the culture from being taken, Letona has

22   qualified immunity for bringing the children back for a second medical examination without allowing

23   the parents to be present.  Notably, defendant does not argue that the law was unclear or that it may

24   not have been clear to a social worker in Letona's position under the circumstances –  where a

25   physician's assistant has requested the return of the children for a second procedure without the

26   parents being present, explaining that the parents had interfered with the court ordered urethral

27   culture on the prior visit – that bringing the children in for a second procedure without the parents'

28   presence was unlawful.  Similarly, no argument has been made that Letona could not have sought

1  guidance from the court at that time, including obtaining an order authorizing the procedure outside

2  the parents' presence.  In any event, defendant Letona has not established that qualified immunity

3  applies to shield her from liability on plaintiffs' eighth claim for relief arising out of the second

4  medical examination of Shafer and Riley.

5        Summary judgment is appropriate, however, on the twelfth claim for relief.  That claim seeks

6  to assert a state constitutional claim for the unlawful search of Shafer and Riley relating to the

7  "warrantless search of their person, and withdrawal of bodily fluids" during the second medical

8  testing on October 6, 2005.  The testing, however, was ordered by the state court.  The twelfth claim

9  for relief is thus without merit.

10        Also, the fifteenth claim for relief for the intentional infliction of emotional distress arising

11  out of the alleged conspiracy to deprive the family of rights to familial association, is subject to

12  summary judgment on grounds of immunity.  In their moving papers, defendants argue that Civil

13  Code Section 47(b) and Government Code Sections 821.6 and 820.2 provide them with immunity

14  from liability for acts taken in connection with their investigation of child abuse allegations, their

15  removal of the minors and instigation and participation in the dependency proceedings.  Plaintiffs

16  rely on *Jacqueline T. v. Alameda County Child Protective Services*, 155 Cal. App. 4th 456, 466

17  (2007).  Plaintiffs argue that the Government Code immunities do not apply to parties who have

18  committed perjury, fabricated evidence, failed to disclose exculpatory evidence and obtained

19  testimony through duress.  As noted by defendants in reply, however, plaintiffs have failed to

20  establish that any of these defendants committed perjury, fabricated evidence, withheld exculpatory

21  evidence, or procured testimony through duress.  Plaintiffs have failed to meet their burden in

22  opposing defendants' motion for summary judgment.  Accordingly, summary judgment in defendants'

23  favor is appropriate.

24        The remaining claim against Letona is the sixth claim for relief for conspiracy to violate the

25  right of familial association by maintaining supervised visitation beyond any reasonably necessary

26  duration without legitimate cause and in furtherance of her intent to prove the commission of sexual

27  abuse by Tracy Watson against Olivia.  Plaintiffs' evidence, however, is too slight to allow the claim

28  to proceed to trial.  Plaintiffs' evidence consists primarily of an October 2006 memorandum by Napa

United States District Court
For the Northern District of California

County social worker Allen, to whom the case had recently been transferred, reflecting a conversation with another Santa Clara County social worker, Linda Baum, who had been involved in the matter when it was the responsibility of Santa Clara County.  Allen contacted Baum seeking an explanation for why the parental visits were still being supervised "given that the parents have been appropriate during all visits and all of the service providers are in support of the minors being returned home."  Exh. 1 to Allen Depo., attached as Exh. 1 to Powell Decl.  Allen's notes report that Baum explained that "we" believed the father was the one who had abused Olivia and that they were continuing supervised visitation because the perpetrator of the abuse had not been determined.  The conversation involved Baum, however, and not Letona.

Plaintiffs make much of Baum's use of the word "we" in describing the belief that Tracy Watson was the one who had sexually abused Olivia, and plaintiffs seize on the "we" to establish a far-reaching conspiracy implicating the other defendants.  The evidence, however, is not sufficient to establish a conspiracy.  Even if every defendant believed that Tracy Watson was the one who had sexually abused Olivia, that does not establish a conspiracy among them to violate the family's Fourteenth Amendment rights of familial association.  In order to oppose summary judgment on a claim upon which plaintiffs will bear the burden of proof at trial, plaintiffs must come forward with evidence sufficient to enable a reasonable trier of fact to find in their favor.  Plaintiffs have not done so.  The Allen memo, and Allen's deposition testimony, are insufficient in and of themselves to establish a conspiracy among the County defendants, including Letona, to deprive plaintiffs of their rights of familial association.

**5.    Motion for Summary Judgment by Defendant County of Santa Clara**

**a.    Civil Rights Claims**

Defendant County of Santa Clara seeks summary judgment on the civil rights claims on the basis that the claims fail to allege a constitutional harm and that there is no evidence that the alleged unconstitutional acts occurred as a result of municipal action.  Also, the County seeks summary judgment on the state law claims on the basis that the claims are barred by collateral estoppel and that plaintiffs have failed to allege any statutory basis for municipal liability.  Plaintiffs contend that County practices violated their constitutional right to familial association, specifically:

a.    that DFCS employees request child-abuse reporters to perform further investigations that are emotionally harmful to children;

b.    that social workers retaliate against parents who invoke their right to counsel;

c.    that social workers and district attorneys share confidential information in violation of standing orders;

d.    that district attorneys abrogate their legal obligations to the children they represent in dependency proceedings;

e.    that VMC employees mishandle laboratory testing and reporting in sexual abuse cases; and

f.    that VMC employees are not adequately trained or supervised regarding testing and reporting in sexual abuse cases.

The County argues that there is no municipal liability under Section 1983 because there are no underlying constitutional violations, but even if there were underlying constitutional violations, plaintiffs cannot establish that there was a County custom or practice with respect to the asserted wrongful conduct. In their opposition brief, and at hearing on the motion, plaintiffs confirmed that they are not pursuing most of these claims of unlawful practices or procedures. Instead, plaintiffs' constitutional claims against the County are limited to the concealment of the SART video and the alleged systemic destruction of, and failure to preserve, biological samples, specifically, the slide containing the chlamydia test culture.

Plaintiffs cannot re-litigate their allegations of mishandling the biological specimen as this issue was tried in the state court proceedings and the court found that the positive chlamydia tests were accurate and that there was no evidence that Olivia's specimens were mishandled or confused with those of another patient. The decision was affirmed on appeal. Further, plaintiffs cannot litigate a constitutional claim arising out of the failure to disclose the SART videotape. Although plaintiffs did not have the opportunity to litigate the specific issue of the undisclosed SART video, the failure to disclose it does not arise to a constitutional violation. The video is only relevant to the issue of whether it depicts Olivia, because if it does not depict Olivia, then the corresponding lab results and positive chlamydia test cannot be attributed to Olivia. Plaintiffs pursued these theories in the juvenile proceedings, however, including offering expert testimony challenging the government's evidence on these issues. The state court did not find the family's witnesses to be credible and accepted the

1   testimony of the County's witnesses, found that the evidence established that Olivia had chlamydia, a

2   sexually transmitted disease, and that this was compelling evidence supporting her removal from the

3   home.  Plaintiffs' present argument is that the SART video would have bolstered the credibility of

4   their witnesses and impeached the credibility of the County's witnesses.  As noted above, however,

5   plaintiffs cannot make that attack here – they are precluded by collateral estoppel from relitigating the

6   accuracy of the test results and the findings that Olivia had chlamydia and had been subjected to

7   abuse.

8          It is, therefore, appropriate to grant the County's motion for summary judgment on plaintiffs'

9   civil rights claims brought under Section 1983.

10                                    **b.  State Law Claims**

11          The County also seeks summary judgment on the state law claims for negligence and for the

12   intentional infliction of emotional distress, arguing that it can only be liable under the doctrine of

13   respondeat superior and there is no evidence that any VMC employee failed to adequately collect,

14   handle or analyze the test that showed Olivia was positive for chlamydia.  Moreover, the juvenile

15   court and court of appeals have rejected plaintiffs' argument regarding lab errors.

16          In opposition, plaintiffs argue that the withholding of the SART video and not providing

17   access to the lab specimen until the slide could no longer be read supports their claims for the

18   intentional infliction of emotional distress.  Plaintiffs also argue that the County laboratory's

19   negligent practices with regard to handling the slides and in destroying specimens made it impossible

20   for plaintiffs to challenge the claimed results, thus supporting the negligence claim.

21          The court is not persuaded by plaintiffs' arguments, nor is it persuaded that there is any

22   genuine issue of material fact presented.  The evidence with regard to the SART video does not rise

23   to the level of outrageous conduct sufficient to support a claim for the intentional infliction of

24   emotional distress.  With regard to the negligence claim, plaintiffs litigated this issue in the juvenile

25   dependency proceedings and failed to establish that the lab results were inaccurate or that the County

26   lab workers made any errors with regard to the specimen.  Thus, they cannot establish that any

27   County employee's conduct was negligent, and, therefore,  the County cannot be held liable under the

28   doctrine of respondeat superior.  The County is entitled to summary judgment on the state law claims.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                          16

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**6.      Motion for Summary Judgment by Valley Medical Center Defendants**

2      Plaintiffs have asserted claims against several defendants affiliated with Valley Medical

3   Center, specifically, defendants Sparks, Noble, Mailhot, Hamilton and Kahle.  Plaintiffs have

4   dropped their claims with regard to Sparks and Noble, but oppose the summary judgment motion

5   brought by Dr. Mailhot, Dr. Hamilton, and laboratory technician Kahle.  Additionally, plaintiffs have

6   asserted claims against physician's assistant Ritter and Dr. Kerns, both affiliated with the Center for

7   Child Dependency at Valley Medical Center.

8      **a.      Mailhot, Hamilton and Kahle**

9      Dr. Mailhot is the Chair of Valley Medical Center's Department of Pathology and Laboratory

10  Medicine.  Dr. Hamilton is the Director of the Microbiology Laboratory at VMC.  Janet Kahle is a

11  Senior Clinical Laboratory Scientist.  Defendants seek summary judgment on all claims asserted

12  against them, specifically the twentieth through twenty-third claims for relief: a Section 1983 claim

13  for violation of plaintiffs' rights of familial association and state claims for intentional infliction of

14  emotional distress, negligence, and conspiracy to violate plaintiffs' civil rights by manipulating the

15  court system through misrepresentations, destruction of evidence, interference in obtaining

16  compliance with court orders and concealment of evidence.  Defendants seek summary judgment on

17  the ground that the doctrines of res judicata and collateral estoppel bar plaintiffs' claims.

18      Collateral estoppel precludes plaintiffs from asserting claims as the factual issues were

19  litigated in the state court proceedings.  Plaintiffs' theory of liability against these defendants arises

20  from the chlamydia test, the validity and results of which plaintiffs dispute.  These issues, however,

21  were vigorously litigated in the state court dependency proceedings resulting in a final decision on

22  the merits which was upheld on appeal.  They are not subject to relitigation here.

23      Although plaintiffs stridently argue that the doctrine of collateral estoppel should not apply

24  because the defendants committed perjury, fabricated evidence, misled the state court and

25  manipulated the court proceedings, the evidence does not support the defendants' accusations.

26  Further, as noted above, collateral estoppel prohibits the collateral attack on a judgment on grounds

27  that evidence was falsified, destroyed or suppressed.  *Cedars-Sinai Medical Center*, 18 Cal.4th at 10

28  (discussing case law).  Plaintiffs' contention that defendants committed perjury, fabricated evidence,

1    or concealed material facts thus provide no basis to preclude application of collateral estoppel here.

2    Accordingly, defendants Mailhot, Hamilton and Kahle's motion for summary judgment is granted.

3                        **b.     Ritter and Kearns**

4           Mary Ritter is a Physician's Assistant at the Center for Child Protection of Valley Medical

5    Center.  Dr. Kerns is the former Medical Director for the Center for Child Protection.  Ritter

6    performed a Sexual Assault Response Team (SART) examination of Olivia, during which she

7    obtained specimens.  The Microbiology Laboratory processed the specimens and determined that

8    Olivia had chlamydia.  Ritter also obtained specimens from Shafer and Riley, pursuant to the state

9    court's order.

10          The only claim asserted against Kerns is the twentieth claim for relief under Section 1983 for

11   violating plaintiffs' rights of familial association through his involvement in court proceedings,

12   training and supervising employees at the Microbiology Lab and the handling or mishandling of the

13   biological sample from Olivia.  The claims against Ritter arise out of the positive chlamydia test and

14   the court-ordered testing of Shafer and Riley.  In their consolidated opposition, plaintiffs characterize

15   their claims as premised on "the collection of the biological sample [from Olivia], the handling of the

16   biological sample and slide specimen, and the destruction of the biological sample.  It also includes

17   concealing of the SART video and concealing of the information related to the transcription errors by

18   Kahle."  Opp. at 25.  Plaintiffs' general theory is that the positive chlamydia test was flawed, which

19   resulted in the court removing the children from their parents' custody and, according to plaintiffs, the

20   deprivation of their rights of familial association.

21          As discussed above, however, the claims arising out of the testing of Olivia and the handling

22   of the biological specimen and the nondisclosure of the SART videotape are barred by collateral

23   estoppel.

24          Finally, with regard to the urethral swab testing of Shafer and Riley, plaintiffs do not dispute

25   that the state court ordered the test to be done.  Plaintiffs' only argument is that doing the medical

26   testing outside the presence of the parents violated the parents' and the children's constitutional rights

27   of familial association.  Defendant Ritter contends that res judicata bars the assertion of this claim

28   against her.  Her argument, however, is not convincing.  Based on the materials submitted by the

United States District Court
For the Northern District of California

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                                                    18

parties, it is not clear that this issue was litigated in state court. The state court was informed that the urethral culture had been obtained without the parents being present, despite the court's order authorizing the parents to be present. Other than that, the court did not want "to belabor the record" with the issue of whether the parents interfered with taking the urethral culture initially, and the issues surrounding the circumstances of the taking of the urethral culture, and constitutional claims arising therefrom, were not decided in the state court proceedings. Thus, to the extent that plaintiffs are asserting a Section 1983 claim against defendant Ritter relating to the violation of their constitutional rights arising out of the taking of the urethral cultures from Shafer and Riley without their parents' being present, summary judgment is denied.[4] The court does not reach the question of whether such a claim is viable, but the basis upon which Ritter seeks summary judgment – res judicata – does not preclude the claim.

Accordingly, the motion for summary judgment by defendants Ritter and Kerns is granted with the exception of plaintiffs' eighth claim for relief under Section 1983 arising out of the taking of the urethral cultures from Shafer and Riley without the parents being present, as to which the motion is denied.

**7.    Motion for Summary Judgment by Defendants City of San Jose, Officers Hoyt and Blank**

Officers Hoyt and Blank were involved in taking Shafer and Riley into protective custody and in detaining and questioning Rene Stalker (as to whom the claims have been dropped). Officer Hoyt was also involved in taking Olivia into protective custody. The remaining asserted claims involve federal and state law civil rights claims arising out of the warrantless entry into plaintiffs' home, the warrantless seizure of Shafer and Riley, and the subsequent warrantless seizure of Olivia. The officer defendants seek summary judgment on these claims on grounds of qualified immunity. Additionally, plaintiff Olivia asserts a claim against defendant Hoyt for the intentional infliction of emotional

---

[4]  The corresponding twelfth claim for relief under state law for the unlawful search of Shafer and Riley relating to the gathering of the urethral cultures, however, fails for other reasons. As pleaded, the claim is based upon an seizure that was unlawful because it was a warrantless search of their persons and withdrawal of bodily fluids. The evidence is undisputed, however, that the urethral culture was performed pursuant to a court order.

distress relating to Hoyt's conduct in various interviews of Olivia.  Defendant Hoyt seeks summary

judgment on this claim on the basis that he is entitled to discretionary immunity and that there is no

evidence of outrageous conduct necessary to support a claim for the infliction of emotional distress.

Finally, the City of San Jose also seeks summary adjudication that it may not be held liable for any

damages incurred after the state court issued its decision in the jurisdictional hearing, finding cause to

remove the children from their parents' custody.[5]

### a.  Civil Rights Claims

"The doctrine of qualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.'"  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)

(quoting, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  "Qualified immunity balances two important

interests – the need to hold public officials accountable when they exercise power irresponsibly and

the need to shield officials from harassment, distraction, and liability when they perform their duties

reasonably.  The protection of qualified immunity applies regardless of whether the government

official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law

and fact.'"  *Id.*, citing *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (J. Kennedy, dissenting).  To

determine whether a defendant is entitled to qualified immunity, the court must first consider whether

the facts, taken in a light most favorable to plaintiff, show that the officer's conduct violated a

constitutional right.  *Saucier v. Katz*, 533 U.S.194, 201 (2001).  If no right was violated, then the

inquiry ends and the officers have immunity from suit.  On the other hand, if the facts construed in a

---

[5]   The only claim asserted directly against the City of San Jose is the ninth claim for relief relating
to the alleged unlawful arrest of Renee Stalker, a claim that plaintiffs said at the hearing that they
were not going to pursue.  In their opposition papers and at the hearing, however, plaintiffs
contended that they are asserting constitutional claims against the City, under *Monnell v. Dept. of
Social Services*, 436 U.S. 658 (1978), for liability for constitutional violations arising from the City's
policies or practices.  Plaintiffs' opposition points to paragraphs 43 and 44 in the Fourth Amended
Complaint, which contain little more than boilerplate recitations of failure to train, and at the
hearing, plaintiffs' counsel also pointed to paragraph 195 as supporting the *Monnell* claim.
Paragraph 195 offers little to support such a claim, however.  Having reviewed the Fourth Amended
Complaint, there is no claim asserted against the City of San Jose seeking to impose liability for
constitutional violations under a *Monnell* theory.  While that claim was asserted in the Third
Amended Complaint, it was not asserted in the Fourth Amended Complaint.

light most favorable to the plaintiff show that the officer's conduct did violate a constitutional right, then a second step is necessary to determine whether the right the official is alleged to have violated was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted. *Id.* at 202. Under *Pearson*, it is permissible to focus first on the second prong, whether a right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful. 129 S. Ct. at 820.

In this case, there are three alleged constitutional violations: the warrantless entry into the family's home, the warrantless seizures of Shafer and Riley at the home, and the warrantless seizure of Olivia the following day when she was taken into protective custody after being brought to the police department for an interview.

To the extent that defendant's motion seeks summary judgment on the Fourth Amendment claim arising from the warrantless entry into the home, the motion is denied. Defendants largely ignore this claim in their briefs, focusing more on the seizures of the children. In any event, defendants have not met their burden of establishing that the facts are sufficiently undisputed that a reasonable officer in defendants' position would conclude that obtaining a warrant prior to entering the home was unnecessary or excused by exigent circumstances.

Similarly, the motion for summary judgment relating to claims arising from the warrantless seizure of Schaefer and Riley is denied. Defendants argue that "[u]nder California law, peace officers have discretion to take children into protective custody <u>without a warrant</u>. Pursuant to Penal Code Section 297.6(a)(1) (*sic*), a peace officer may take a child into protective custody if the officer reasonably believes that 'a person is likely to conceal the child, flee the jurisdiction with the child, or, by flight or concealment, evade the authority of the court.'" Motion at 12 (emphasis added). Defendants' argument in misleading. While Section 279.6(a)(1) identifies various circumstances under which a law enforcement officer may take a child into protective custody, it says nothing about an officer's authority to do so without a warrant.

Defendants also argue that:

the officers have articulated a reasonable fear of imminent danger of future harm to the child/ren to show exigency. Despite the absence of any cases on point, the analysis supports a finding of exigency under the situation that confronted the officers on June

1 | 29th: the potential suspect is with the alleged abuse victim in an unknown location; the suspect has thwarted CPS' efforts to interview O.S. by taking her out of school following CPS's phone call; the suspect refuses to return to the home with the victim; and the officers are left with the difficult decision of whether to leave the two additional minor children in the home or take them into protective custody.

Motion at 13-14.  The officers, however, had a third option – they could have obtained a warrant.

*Mabe v. San Bernardino County*, 237 F.3d 1101 (9th Cir. 2001), cited by defendants, actually undermines their claim to qualified immunity here.  The Ninth Circuit in *Mabe* noted that government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.  *Id.* at 1106, quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000).  Addressing the second prong of the qualified immunity test, the court explained:

> The second prong of the qualified immunity test focuses on whether a reasonable official would have believed her conduct was lawful.  Whether Perry could have believed that removing MD under the facts of this case was lawful depends on whether a reasonable social worker could have believed that exigent circumstances existed on August 21, 1995, sufficient to override the warrant requirement.

*Id.* at 1107 (internal citation omitted).  The court concluded that summary judgment was not appropriately granted and reversed the district court, concluding that a material issue of fact existed regarding whether there was reasonable cause to believe, on the information in the possession of the official at the time of the minor's removal, that the minor faced an imminent danger of serious bodily injury sufficient to justify a warrantless entry into the home and the seizure of the minor.  The same result is appropriate here.  The material facts are disputed and the court cannot say as a matter of law that a reasonable officer in defendants' position would have concluded that there was any exigency present sufficient to justify the warrantless removal of Shafer and Riley.

Plaintiffs correctly note the applicable standard: to justify the warrantless seizure of Shafer and Riley, who were at home in the care of their grandmother and a babysitter while the parents were elsewhere, the officers must have had reasonable cause to believe that these two children were in imminent danger of serious bodily injury and that taking them into custody was reasonably necessary to avert that injury.  *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000).  Defendants have not met this

United States District Court
For the Northern District of California

1  showing.  The report of suspected sexual abuse of a child involved only Olivia.  Olivia and her father

2  were not home when the officers arrived.  The two younger siblings were home, being cared for by

3  their grandmother and a babysitter.  When the officers arrived at the home, the officers learned that

4  she was with her father.  When the father refused the officers' demands to bring Olivia home, the two

5  younger siblings were taken into protective custody.  Based on the present evidentiary record,

6  defendants have not established that a reasonable officer could conclude that Shafer and Riley were

7  in imminent danger of serious bodily injury and that taking them into custody (without a warrant) was

8  reasonably necessary to avert that injury.  Defendants' motion for summary judgment on the claims

9  arising from the seizures of Shafer and Riley is denied.

10       The same evidentiary difficulty arises with regard to plaintiffs' claim relating to the seizure of

11  Olivia.  Defendant Hoyt is alleged to have been involved in taking her into protective custody after

12  the first investigatory interview and he seeks summary judgment in part based on qualified immunity.

13   Here, however, defendants also rely on California Welfare and Institutions Code Section 305 for the

14  proposition that an officer may take a child into temporary protective custody without a warrant if the

15  child is in immediate danger of abuse.  Section 305 provides that:

16       Any peace officer may, without a warrant, take into temporary custody a minor:

17       (a) When the officer has reasonable cause for believing that the minor is a person
        described in Section 300, and, in addition, that the minor has an immediate need for
18       medical care, or the minor is in immediate danger of physical or sexual abuse, or the
        physical environment or the fact that the child si left unattended poses an immediate
19       threat to the child's health or safety.

20  Cal. Welf. & Inst. C. §305(a).

21       Defendants have not established, however, that there was reasonable cause for believing that

22  Olivia was in imminent danger of abuse, under the circumstances.  No explanation has been offered

23  as to why a warrant could not have been obtained.  To the contrary, defendants suggest in their brief

24  that Hoyt did not believe there was a police reason to detain Olivia but that she could not be returned

25  home because it was against DFCS' policy to return the child to the home until such time as the

26  parents could be interviewed and DFCS had not been able to interview the parents.  Motion at 15-16

27  and n.7.

28

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                    23

1    The material facts are disputed and defendant has not established that a reasonable officer in

2  Detective Hoyt's position would have concluded that there was any exigency present sufficient to

3  justify taking Olivia into custody without a warrant.

4    **b.**    **Intentional Infliction of Emotional Distress**

5    Defendant Hoyt also seeks summary judgment on the thirteenth claim for relief, a claim

6  brought by Olivia for the intentional infliction of emotional distress arising from Hoyt's interviews of

7  Olivia.  Hoyt asserts two grounds for summary judgment: first, that he has immunity under California

8  Government Code Section 820.2 for his discretionary acts in conducting the interviews; and second,

9  that there are no facts rising to the level of outrageous conduct, which if proven could impose liability

10  for the intentional infliction of emotional distress.

11    Plaintiffs' opposition focuses on what plaintiffs view as the outrageousness of Hoyt's actions

12  but their argument is not persuasive.  The court has considered the videotaped interviews and finds

13  that no reasonable juror could find that anything therein rises to the level of outrageous conduct

14  sufficient to support a claim for the intentional infliction of emotional distress.  Plaintiff has also

15  pointed to no evidence that Olivia suffered severe emotional distress as a result of the interviews.

16  Moreover, plaintiffs' opposition does not address defendant's immunity argument, an argument that

17  appears to be well-founded.  Public officials have immunity from state law claims asserted against

18  them arising out of their discretionary acts.  Cal. Gov't Code §820.2; *Alicia T. v. County of Los*

19  *Angeles*, 222 Cal. App. 3d 869 (1990) (social workers have immunity from claims arising from child

20  abuse investigations); *Reynolds v. County of San Diego*, 858 F. Supp. 1064, 1074 (S.D. Cal. 1994).

21  Defendant Hoyt's decision to interview Olivia – and how to conduct the interview – were

22  discretionary acts performed within the scope of his public duties, and accordingly, he has immunity

23  from Olivia's claim arising from that decision.  There was also no outrageous conduct by Hoyt in the

24  conduct of his interviews.

25    **c.**    **Limitation of Damages**

26    The City's motion also seeks a determination that any damages arising from the detention of

27  Shafer, Riley and Olivia are limited to that period of time between the initial detention of the children

28  on June 29 and 30, 2005 and the dependency court's first determination on July 5, 2005 that the

United States District Court
For the Northern District of California

1  children were properly removed from the custody of their parents.  Defendants argue that the court's

2  determination that continued detention of the children was necessary due to a substantial danger to

3  the children as a matter of law is a superseding cause that breaks the chain of causation.  Defendants

4  rely on *Smiddy v. Varney*, 995 F.2d 261 (9th Cir. 1981), among other authorities.

5      Plaintiffs' opposition rests on little more than the assertion that this issue is not properly raised

6  on summary judgment and should more properly be raised as a motion in limine prior to trial.

7          Plaintiffs' argument is not persuasive.  Defendant is entitled to know the scope of potential

8  liability it faces as it prepares for trial, and there is nothing improper in seeking a determination from

9  the court that the state court's first finding of jurisdiction over the minor children serves to cut off

10  any damages that may have flowed from the initial detention, assuming such detention was

11  unlawful.  The state court determined on July 5, 2005 that the children's continued detention was

12  necessary because there was a substantial danger to their physical health and there were no

13  reasonable means by which their physical health could be protected without their removal from their

14  parents' care.  Even assuming that the initial detention of the children was unlawful, the potential

15  liability of the San Jose defendants is limited to damages for the one-week period from the initial

16  detentions on June 29 and 30, 2005 to the state court's ruling on July 5, 2005.

17          **8.      Motion for Summary Judgment by Defendant West**

18      Defendant West was appointed as counsel for the children in the underlying juvenile

19  proceedings.  She moves for summary judgment on the Section 1983 claims on the basis that she did

20  not act under color of state law in performing her functions as counsel for the children and thus

21  cannot be held liable under Section 1983.  Defendant West seeks summary judgment on the state law

22  claims for the intentional infliction of emotional distress on the ground that she has immunity from

23  liability based on the litigation privilege set forth in California Civil Code Section 47(b).  Finally,

24  she seeks summary judgment on the legal malpractice claim on the basis that plaintiffs have not

25  raised a genuine triable issue of material fact suggesting that her conduct fell below the standard of

26  care or that any alleged negligence resulted in prejudice.

27      At the hearing, plaintiffs' counsel conceded that West was not a state actor for purposes of

28  Section 1983 but nonetheless suggested that West could be held liable under Section 1983 for

United States District Court
For the Northern District of California

1   conspiracy.  Plaintiffs argue that the litigation privilege does not apply to claims brought by a client

2   against the client's attorney.  With regard to the legal malpractice claim, plaintiffs argue that there

3   are material facts in dispute regarding West's alleged negligence.

### a.  Section 1983 Claims

5       Defendant West's motion for summary judgment on the Section 1983 claims is granted.

6   Since West was not a state actor for purposes of Section 1983, liability could only attach for a

7   Section 1983 violation if plaintiffs could establish their conspiracy theory.  They cannot.  Plaintiffs

8   have failed to identify evidence of a conspiratorial agreement involving West.  Accordingly,

9   defendant West's motion for summary judgment on the sixth, twentieth and twenty-third claims

10  asserted against her under 42 U.S.C. § 1983 is granted.

### b.  Intentional Infliction of Emotional Distress

12      The fifteenth claim is for the intentional infliction of emotional distress and is brought by all

13  plaintiffs against defendant Letona, Burgan, Castaldi and West.  It is premised upon the alleged

14  conspiracy to interfere with the plaintiffs' familial association rights.  Specifically, the claim alleges:

> by the maintaining of supervised visitation and disregard of the plaintiff parents (*sic*)
> compliance with all case plan objectives, which interference with the plaintiffs (*sic*)
> familial association was without legitimate cause and in furtherance of the defendants
> (*sic*) intention to "prove" the commission of sexual abuse by Tracy Watson against
> his daughter O.S. despite the lack of any ruling by the juvenile court that Mr. Watson
> had ever sexually abused O.S., and DFCS's withdrawal of that claim, at least
> formally, on an Amended Petition submitted to the juvenile court prior to the juvenile
> court's ruling on jurisdiction.

FAC ¶ 306.

20      The nineteenth claim for the intentional infliction of emotional distress is brought by only the

21  minor plaintiffs against Letona, Burgan, Castaldi and West, arising out of the children's "placement

22  and continued retention of the children in a primarily Spanish speaking home, which conduct was

23  undertaken with the intention to inflict emotional distress on the children, or with reckless disregard

24  of the likelihood of causing the plaintiff children severe emotional distress."  FAC ¶ 328.

25      First, as discussed above, plaintiffs have failed to show facts from which it could be

26  reasonably inferred that West was part of a conspiracy to interfere with familial association.

27  Therefore, she cannot be liable on a conspiracy theory.  West's papers, however, focus on her

28

United States District Court
For the Northern District of California

1  argument that she is protected by the litigation privilege set forth in California Civil Code Section

2  47(b).  West also raises the argument that her conduct, as alleged, does not rise to the level of

3  outrageous conduct that is required to support a claim for the infliction of emotional distress.

4       Plaintiffs argue that the litigation privilege does not apply to claims brought against an

5  attorney by her clients and cite case law in support of the proposition that the litigation privilege

6  does not bar claims for malpractice.  In making these arguments, however, plaintiffs overlook the

7  breath of their claim.  First, not all of the plaintiffs were West's clients, so plaintiffs have failed to

8  adequately explain why the tort claims of Tracy Watson and Renee Stalker are not precluded by the

9  litigation privilege.  The malpractice exception has no application to the claims for the intentional

10  infliction of emotional distress brought by the non-client plaintiffs.

11       The litigation privilege protects an attorney from claims arising out of her conduct of legal

12  proceedings.  In this case, even if the litigation privilege does not apply to immunize any role West

13  allegedly played in extending supervised visitation or in placing the minors in an inferior foster

14  home, that conduct does not constitute such outrageous conduct that no reasonable person could be

15  expected to endure it.  *Fletcher v. Western Life Insurance Co.*, 10 Cal. App. 3d 376, 397 (1970);

16  *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982); *Christensen v. Superior Court*, 54

17  Cal.3d 868, 903 (1991).  Accordingly, defendant West is entitled to summary judgment on the

18  intentional infliction of emotional distress claims brought against her by plaintiffs Stalker and Tracy

19  Watson.

20       With regard to the children's claim for the intentional infliction of emotional distress asserted

21  under the fifteenth claim for relief, their claim that West acted with reckless disregard of the

22  probability that her conduct with respect to the claims against the parents would cause the minors to

23  suffer severe emotion distress is not supported by facts raising a genuine issue of material fact.

24  Therefore, West is entitled to summary judgment on the fifteenth claim for relief.

25       However, the minor plaintiffs' showing that West acted with reckless disregard that they

26  would probably suffer severe emotional distress as a result of their placement and continued

27  residence in "the primarily Spanish speaking home," although marginal, is sufficient to avoid

28  summary judgment on the nineteenth claim for relief.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                          27

### c.     Malpractice

Finally, defendant West seeks summary judgment on the sixteenth claim for relief, legal malpractice, brought against her by the three minor children.  Plaintiffs make a multitude of wide-ranging claims of malpractice in their written opposition to West's motion.  However, their fourth amended complaint and their expert, Jennifer Ani, basically address only four categories of actions or omissions which allegedly constituted below standard conduct:

> a.     Failing to resist the second MDI interview of Olivia by Detective Hoyt. (Ani Decl. ¶12)
>
> b.     Failing to visit the children for over two months following commencement of representation in the juvenile dependency proceedings and failing to visit and investigate the foster home where the children were placed. (*Id.* ¶¶ 20-23)
>
> c.     Not conducting any independent investigation into the evidentiary matters related to the factual allegations made against the parents. (*Id.* ¶25)
>
> d.     Not disclosing the fact that SART examinations are videotaped, obtaining the copy in this case and having it independently reviewed by experts, despite "suspect circumstances surrounding the SART evidence and Chlamydia evidence." (*Id.*  ¶26, and second ¶ 21).

West's duties to the three minors were governed by California Welfare and Institutions Code Section 317.

In order to establish a claim for professional negligence, the plaintiff children must prove two elements: (1) that the attorney failed to act in a manner to be expected of a reasonably competent attorney in dependency proceedings, and (2) that but for that conduct, a more favorable outcome would have been achieved.  *Budd v. Nixen*, 6 Cal.3d 195 (1971).  "Counsel appointed for children in dependency cases have duties and responsibilities unique in the law. A primary responsibility of minor's counsel appointed under section 317 is 'to advocate for the protection, safety, and physical and emotional well-being of the child.' " *In re Kristen B.*, 163 Cal.App. 4th 1535, 1541 (2008).  "[T]he paramount duty of counsel for minors is not zealously to advocate the client's objectives, but to advocate for what the lawyer believes to be in the client's best interests, even when the lawyer and the client disagree."  *In re Zamer,* 153 Cal.App.4th 1265 (2007).

United States District Court
For the Northern District of California

Breach of duty and causation in legal malpractice cases ordinarily present questions of fact which cannot be resolved by summary judgment.  Thus, the issues may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion.  *See Kurinij v. Hanna & Morton,* 55 Cal. App. 4th 853, 864 (1997).  The malpractice claims must be reviewed in the light of these standards.

The plaintiffs' claim with respect to the second interview of Olivia is unclear as to whether plaintiffs assert that West should have in some way prevented the interview or that she should have been present and offered more protection to her client.  There is no specific evidence that Olivia suffered any emotional distress as a result of the interview but it appears that the parties acknowledge that the interview was stressful.  Defendant focuses her argument that the second interview was subsequent to, and the result of, the positive chlamydia test and that the investigation by the police was ongoing.  Although West may have in good faith believed that the second interview was proper and potentially in her client's best interest despite her client's denial of any molestation, there is a question of fact as to whether she should have been more protective of her client and should have attended the interview.

The claim that West should have done more with respect to decision to place the children in the particular foster home where they were placed also presents a question of fact that cannot be resolved on summary judgement.  It may well be that the placement was the best choice of the alternatives available, but Ani's declaration raises a question of fact as to whether West should have been more involved.

Ani also claims that West should have done more regarding the investigation of the claims against the parents.  However, she lacks an adequate foundation for this opinion.  Ani claims that West should have performed an independent investigation of the evidentiary matters related to the parents.  However, Ani does not offer facts showing that West could not reasonably rely on the test results and other evidence that was presented or that what she could have done would have caused a reasonable judge to come to a different conclusion.  Although Ani is critical of West's acceptance of the chlamydia test results and her failure to obtain the SART video, there is no evidence West even knew of the video or had reason to challenge what appeared to be conclusive test results.  West's

United States District Court
For the Northern District of California

1    duties were not to the parents nor was she obligated to argue whatever positions her clients wanted.

2    Her obligation was to advocate for the "protection, safety, and physical and emotional well-being" of

3    her minor clients.  Cal. Welf. & Inst. Code § 317.  Ani is critical of West's work but she does not

4    state that West's overall position was wrong or that West 's conduct was the proximate cause of the

5    removal of the children from the parents.

6         West may be subject to criticism with respect to her representation of the children in not

7    providing more support and not investigating the particular foster home in which they were placed.

8    Whether or not a finder of fact would determine that plaintiffs' position is supported and accept it

9    over the testimony of others is not appropriate for the court to determine at this juncture.  However,

10   the evidence does not raise a triable issue of fact that West failed to do something or did something

11   negligently which proximately resulted in an inappropriate removal of the children.

12                                    **CONCLUSION**

13        For the foregoing reasons, it is hereby ordered that all of defendants' motions for summary

14   judgment are granted, except as follows:

15        1)      Defendant Tran's motion for summary judgment on plaintiffs' claims arising from his

16   warrantless entry into the home and the warrantless seizures of Shafer and Rile are denied;

17        2)      Defendant West's motion for summary judgment is denied on the sixteenth claim for

18   relief for malpractice as to the claims that she failed to support Olivia by representing her at the

19   second interview with the police and that she failed to adequately investigate and protect the best

20   interest of the minors when placement in the foster home was considered.  The motion is also denied

21   on the nineteenth claim for relief for intentional infliction of emotional distress.  In all other respects,

22   defendant West's motion is granted.

23        3)      Defendants Letona and Ritter's motions for summary judgment on the eighth claim

24   for relief arising out of taking urethral cultures from Shafer and Riley outside the presence of the

25   parents is denied;

26        4)      Defendants City of San Jose, Detective Hoyt and Officer Blank's motion for summary

27   judgment on claims arising from the warrantless entry into plaintiffs' home and the warrantless

28   seizures of Shafer, Riley and Olivia are denied.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                                    30

1      In all other respects, the motions are granted.  With regard to the City of San Jose's potential

2  liability for damages arising out of the seizures of Shafer, Riley and Olivia, damages are limited to

3  the time period from the date of the children's respective seizures until the July 5, 2005 order of the

4  state court finding the detention of the children was justified.

5

6

7  DATED:        5/19/2010

8                                                 RONALD M. WHYTE
                                                  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                                31

United States District Court
For the Northern District of California

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiffs:**

3  Dennis R. Ingols                dingols@rrpassociates.com
   Peter J. Johnson                jjlaw2@earthlink.net
4  Robert Ross Powell              rpowell@rrpassociates.com

5  **Counsel for Defendants:**

6  Jacquelyn Kimmet Wilson         jkw@swr-law.com
   Clifford S. Greenberg           cao.main@ci.sj.ca.us
7  Melissa R. Kiniyalocts          melissa.kiniyalocts@cco.co.scl.ca.us
   David Michael Rollo             david.rollo@cco.sccgov.org
8  Gregory Joseph Sebastinelli     gregory.sebastinelli@cco.co.scl.ca.us
   Shannon Smyth-Mendoza           shannon.smyth-mendoza@sanjsoeca.gov

9

10

11  Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.
12

13  **Dated:**      5/20/10                              TER
                                               **Chambers of Judge Whyte**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON MOTIONS FOR SUMMARY JUDGMENT
No. C-06-04029 RMW
TER                                              32

**United States District Court**
For the Northern District of California