RICHARD DOYLE, City Attorney (#88625)
NORA FRIMANN, Chief Trial Attorney (#93249)
CLIFFORD GREENBERG, Senior Deputy City Attorney (#122612)
SHANNON SMYTH-MENDOZA, Senior Deputy City Attorney (#188509)
Office of the City Attorney
200 East Santa Clara Street
San Jose, California  95113
Telephone:   (408) 535-1900
Facsimile:   (408) 998-3131
Email:       cao.main@sanjoseca.gov

Attorneys for Defendants CITY OF SAN JOSÉ,
WILLIAM HOYT, and CRAIG BLANK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSÉ FACILITY

| | |
|---|---|
| TRACY WATSON, RENEE STALKER, OLIVIA STALKER, SHAFER WATSON, RILEY WATSON,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al;<br><br>Defendants. | NO.:   C06-04029 RMW<br><br>**DEFENDANTS' SUPPLMENTAL BRIEF RE: *MONELL* ISSUE**<br><br>Trial Date:   November 1, 2010<br>Time:         1:30 p.m.<br>Crtrm:        6<br>Judge:        Hon. Ronald M. Whyte |

## I.   **INTRODUCTION**

Defendants' City of San Jose, William Hoyt ("HOYT"), and Craig Blank ("BLANK") submit the following supplemental brief addressing the prejudice to Defendants in allowing Plaintiffs' to amend their Fourth Amended Complaint on the eve of trial to allege a *Monell* claim against the City of San Jose.

## II.   **LEGAL ARGUMENT**

**A.   PLAINTIFFS NOT ONLY FAILED TO ADEQUATELY PLEAD A *MONELL* CLAIM AGAINST THE CITY OF SAN JOSÉ, BUT FAILED TO TIMELY AMEND.**

This case has been heavily litigated for the past four years.  After being continued, the trial is set to finally commence on Monday, November 1, 2010. Non-expert discovery closed more than a year ago and, pursuant to the operative Stipulation and Order to Modify

1

1    Scheduling Order (Docket No. 361) e-filed in this matter on May 20, 2010, final deadlines

2    were set regarding experts, expert discovery and related motions.  A Pre-Trial Conference

3    date was also set for October 14, 2010, with pretrial documents due by September 29, 2010.

4    The first attempt by Plaintiffs to amend their Fourth Amended Complaint ("FAC") was in

5    conjunction with the submission of their pretrial documents on September 29, 2010, despite

6    the fact that, following oral argument in December 2009 on Defendants' Motions for

7    Summary Judgment and, after taking the matter under submission, this Court ruled that

8    Plaintiffs' FAC contained no *Monell* claim.  (See Order on Motions for Summary Judgment,

9    Docket No. 360, at p. 20, note 5).  As the Court properly determined, it appeared that

10   Plaintiffs intentionally dropped their *Monell* claim against the City of San Jose, when drafting

11   their Fourth Amended Complaint.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986). ("All

12   causes of action alleged in an original complaint which are not alleged in an amended

13   complaint are waived.").

14          At no time during the ensuing five months, did counsel for Plaintiffs raise or discuss

15   the issue with counsel for the City and in no way advised counsel for the City that Plaintiffs'

16   would be seeking to amend to add the *Monell* claim. The issue of whether Plaintiffs intended

17   to include a *Monell* claim did not come up until meet and confer discussions regarding the

18   filing of the Pretrial Conference Statement in September 2010.  (See Declaration of Clifford

19   S. Greenberg in Opposition to Plaintiffs' Motion for Reconsideration/ Leave to Amend,

20   "Greenberg Decl.", Docket No. 400, at ¶7).

21   **B.     PLAINTIFFS' MOTION TO AMEND ON THE EVE OF TRIAL WOULD BE
22          PREJUDICIAL TO DEFENDANTS.**

23          Although FRCP 15 generally allows a party to amend his/her complaint by leave of the

24   court at any time, and such leave "shall be freely given when justice so requires", it is not

25   absolute.  The Court has discretion to deny a belated motion to amend a complaint, that

26   already has been amended four times, to assert a claim that had been withdrawn and is now

27   being pulled out of Plaintiffs' hip pocket for trial. FRCP 15(a)(2); see also *Hancock Oil Co. v.*

28

DEFENDANTS' SUPPLEMENTAL BRIEF RE:                    C-06-4029 RMW
*MONELL* ISSUE                                         702653.doc

1  *Universal Oil Products Co.* 120 F.2d 959, 50 USPQ 175 (9th Cir. 1941), cert den (1941) 314

2  US 666.

3      The Ninth Circuit test for determining whether to grant a motion to amend depends on

4  the following five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party;

5  (4) futility of amendment; and (5) whether the movant has previously amended its complaint.

6  *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

7      It is undisputed that Plaintiff's FAC fails to include a *Monell* claim.  The issue at this

8  juncture—a few days before trial— is whether there is any prejudice to the City should

9  Plaintiffs be allowed to amend the complaint to add a *Monell* claim.  Even if the Court

10  excludes expert testimony on the issue, Defendants are prejudiced in a number of ways,

11  including, but not limited to, an inability to now bring a summary judgment motion to dispose

12  of the *Monell* claim on the merits, and to assert the futility of the amendment to add the

13  *Monell* claim, which would have been fully challenged by Defendants in a motion for

14  summary judgment.

15      At the pretrial conference on October 21, 2010, counsel for Plaintiffs offered the

16  excuse that his co-counsel used a different pleading than he generally used, which was

17  purportedly the reason that the *Monell* claim was not included in the FAC.   However, no

18  excuse was articulated for the undue delay in seeking to amend once the Court determined

19  that the *Monell* claim no longer existed.  If there had been an oversight by counsel, Plaintiffs

20  could have and should have moved to amend once the Court issued its May 20, 2010 Order

21  on Summary Judgment Motions. Instead, Plaintiffs waited to make their motion until

22  approximately thirty (30) days before trial, after expert discovery ended and well after the time

23  for Defendants to bring a motion for summary judgment on the merits of a *Monell* claim by

24  Plaintiffs.

25  / / /

26  / / /

27  / / /

28

DEFENDANTS' SUPPLEMENTAL BRIEF RE:                    C-06-4029 RMW
*MONELL* ISSUE                                                          702653.doc

1   The *Monell* theory of liability was included in Plaintiffs' Third Amended Complaint, and

2   removed from the FAC.  There has been no explanation as to why Plaintiffs failed to move to

3   amend again upon receipt of the Court's summary judgment order.  The current motion to

4   amend is untimely and should be denied.

5   **1.      Plaintiffs' Purported *Monell* Claim Fails on the Merits**

6   Should the Court now entertain Plaintiffs' unpleaded claim for unconstitutional

7   practices or policies on the part of the City, that claim should be dismissed for failure to

8   supply sufficient evidence in support of such claim.

9   In their Opposition to Defendants' Motion for Summary Judgment ("Opposition"),

10  Plaintiffs offered the theory that the City has failed to train its officers on federal laws as they

11  relate to child abuse investigations and removal of children from their families.  In support of

12  that theory, Plaintiffs supplied several facts.  First, they asserted that Defendant BLANK

13  conducted 20 removals of children and never obtained a warrant to do so.  (Opposition, p.

14  11).  Second, they asserted that the "sibling protocol" in and of itself constituted deliberate

15  indifference to the constitutional rights of individuals.  *Ibid*.  When asked about the need to

16  interview the child(ren) as soon as possible due to the allegation that the father may be the

17  abuser, Hoyt testified as follows:

18      Q    You agree -- that was your testimony -- that you take the child -- or

19      excuse me -- you do not leave the child with the suspected abuser?

20      A    That's correct.

21      Q    That's the policy?

22      A    I don't know if that's the policy.  That's my interpretation of it.

23      Q    So that's your understanding based on your training and experience in

24      San Jose Police Department, that you do whatever you can to make sure you

25      do not  leave the child with the suspected abuser?

26      A    Absolutely.

27  Deposition of William Hoyt ("Hoyt Depo."), May 28, 2008, Vol. I, p. 146:13-24.

28

4

1    Plaintiffs also offered the fact that Defendant HOYT testified that he had never been

2 trained in how to write an affidavit in support of a warrant (Opposition, p. 14) although they

3 note that Defendant HOYT knew how to obtain warrants generally and indeed knew that in a

4 non-consensual situation, exigency or a warrant would be required to remove children.

5 (Opposition, p. 15; Hoyt deposition, pp. 161-162, Exh. C to Powell Declaration in Support of

6 Opposition.)  Finally, Plaintiffs supplied the information that Defendant BLANK never

7 obtained a protective custody warrant in the 20 or so removals of children that he had been

8 involved with, and did not recall receiving training regarding obtaining warrants for the

9 purpose of removing children from their homes.  (Opposition, pp. 10-11).

10    As set forth in the City's Reply to Plaintiffs' Opposition, these facts are insufficient to

11 state a claim, or even to raise a proper inference of, an unconstitutional custom or policy.

12 In *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-485   (9th Cir. 2007) the court stated:

> Evidence of the failure to train a single officer is insufficient to
> establish a municipality's deliberate policy. In *Alexander* we held
> that an executor seeking to hold a municipality liable for the
> testator's shooting death during a police raid of his home could not
> establish as a matter of law, solely on evidence of the
> municipality's failure to train only one officer, that the municipality
> had made the "deliberate" or "conscious" choice required under
> *Canton. See Alexander*, 29 F.3d at 1367.   We explained that,
> absent evidence of a "program-wide inadequacy in training," any
> shortfall in a single officer's training "can only be classified as
> negligence on the part of the municipal defendant -- a much lower
> standard of fault than deliberate indifference." *Id.*

20    Plaintiffs' supplied only the argument that Defendants HOYT and/or BLANK were not

21 adequately trained. They offered no proof at all of San Jose's practices or alleged training

22 inadequacies and will be unable to offer any such evidence at trial.  Plaintiffs have not

23 supplied, nor will they be able to supply, the testimony of a policy maker or person in

24 authority in the Department to testify as to how officers are trained or not trained.  Plaintiffs

25 simply argue that Defendants HOYT and/or BLANK either didn't know the law or didn't follow

26 it, and therefore the City has an unconstitutional policy.  As stated in *Blankenhorn, supra*, this

27 is not sufficient.

28

5

1    Indeed, Defendant HOYT testified that he *was* aware that removal of children from a

2 home required either exigency or a warrant.  Hoyt testified at his deposition as follows

3 regarding the warrant requirement and exceptions thereto:

4    Q   You know that normally to go into somebody's home, you need a

5    warrant, right?

6    A   Or exigency.

7    Q   Or exigency.  In this case you did not have a warrant when you guys

8    entered the home, right?

9    A   Correct.

10    Q   And however, did you -- when you entered the home, were you under the

11    belief at that time, whether it was accurate or not, that because CPS was

12    involved with this that that gave authorization to enter the home?

13    A   No.

14    Q   So you recognized there would still be a requirement for exigency?

15    A   Right.

16 Hoyt Depo., at p. 168:6-20.

17    Furthermore, the actual written County Child Abuse Protocol, about which all officers

18 have testified, provides explicit reference to the warrant requirement.  Page 4 of the protocol,

19 attached as Ex. "C" to Greenberg Decl. in Support of Reply to Opposition (Docket No. 340),

20 provides:

21    Without exigent circumstances or parental consent, the investigating officer or social worker must obtain a search warrant,

22    protective custody warrant, or other court order to enter the child's home, place a child into protective custody, or obtain an

23    investigatory or sexual abuse medical exam.

24    The protocol cites to *Calabretta v. Floyd,* 189 F.3d 808 (9th Cir. 1999), *Wallis, and*

25 *Mabe.*  It is quite clear, under this protocol that the policy of the City is to obtain warrants in

26 the appropriate circumstances.  Even if it is established that the officers did not do so in the

27

28

1   current situation, or in others, that circumstance does not establish that the City had an

2   unconstitutional policy.

3                                   III.        **CONCLUSION**

4          For the foregoing reasons, and for the reasons set forth by Defendants in their pretrial

5   documents and at oral argument at the pretrial conference, Plaintiffs' belated motion to

6   amend the Fourth Amended Complaint to add a Monell claim should be denied on the basis

7   of prejudice to Defendants.

8                                              RICHARD DOYLE, City Attorney

9

10  DATED:        October 26, 2010            By: _____/s/ Clifford S. Greenberg_____
                                                   CLIFFORD S. GREENBERG
11                                                 Senior Deputy City Attorney
                                              Attorneys for Defendants CITY OF SAN
12                                            JOSÉ, WILLIAM HOYT, and CRAIG BLANK

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SUPPLEMENTAL BRIEF RE:                          C-06-4029 RMW
*MONELL* ISSUE                                              702653.doc