E-filed on: 9/20/13

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRACY WATSON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, *et al.*,<br><br>Defendants. | No. C-06-04029 RMW<br><br>**ORDER RE ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988**<br><br>**[Re: Dkt. No. 535]** |

Plaintiffs seek attorneys' fees from City of San Jose police officers William Hoyt and Craig Blank against whom they prevailed in this litigation. Plaintiffs request an award of attorneys' fees in the sum of $999,026 (which includes a multiplier enhancement of 2 on the attorneys' fees).[1] It is not disputed that plaintiffs are the prevailing parties for the purposes of obtaining attorneys' fees under 42 U.S.C. § 1988(b). The issue is only the reasonableness of the fee request under the circumstances of this case. Having considered the parties' papers, arguments at the hearing, and the plaintiffs' attorneys' billing records, the court grants plaintiffs' motion for attorneys' fees as set forth below.

---

[1] Plaintiffs initially requested an additional $18,845 in costs (for a total of $1,017,871), but later waived any entitlement to costs by failing to file a Bill of Costs. *See* Reply 2, Dkt. No. 544 (acknowledging plaintiffs' waiver).

## I. PROCEDURAL HISTORY

Plaintiffs filed this lawsuit in June 2006 against thirty-four defendants, alleging various constitutional violations and state law torts arising out of: (1) the removal of the three minor children from their parents' custody; (2) the conduct at the related state court dependency proceedings; and (3) the length and circumstances of the supervised visitation prior to the reunification of the children and their parents. Following four rounds of amendments to the complaint, in December 2008 and early 2009 various defendants brought motions to dismiss. In March 2009, the court dismissed five defendants from the case. *See* Dkt. No. 180.

The defendants can be grouped into three categories: (1) Evergreen School District and certain teachers, (2) County of Santa Clara and certain social workers, an attorney, and a physician; and (3) City of San Jose and its police officers Hoyt and Blank. The case was dismissed against all School District employees, dismissed as to some County defendants and settled for $350,000 against others, and proceeded to trial against the City and officers Blank and Hoyt on claims for the alleged warrantless entry into plaintiffs' home and warrantless seizure of the three children. Plaintiffs also sought recovery against the City on a *Monell*[2] claim for failing to train its officers.

The court held a six day jury trial in March 2011 on the claims against officers Hoyt and Blank and the City of San Jose. The jury returned a verdict in favor of plaintiffs on their § 1983 claims against officers Hoyt and Blank but in favor of the City of San Jose with respect to the claim for failure to train its officers. The jury assessed total damages of $3.25 million dollars in compensatory damages and $2 million in punitive damages.

In January 2012, the court granted defendants' motion for a new trial on damages on the grounds that the court made some evidentiary and instructional errors and, in any event, the damages awarded were grossly excessive.

The court held the new trial on damages over seven days in August and September 2012. The jury returned a total award for all plaintiffs of $210,002.00 in compensatory damages. It denied

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)

plaintiffs' claim of entitlement to punitive damages. Plaintiffs have filed an appeal from the judgment entered. However, the court retains jurisdiction to make an award of attorneys' fees through the date of the trial court judgment.

On October 11, 2012, plaintiffs filed the present motion for attorneys' fees. On August 29, the court permitted defendants to respond to the itemization of services filed by plaintiffs, Order re: Further Briefing on Attnys' Fees, Dkt. No. 576, which defendants did file on September 12, 2103, Dkt. No. 579.[3]

## II. ANALYSIS

### A. Legal Standard

The governing fee statute, in relevant part, provides:

> In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988(b). Case law is clear, however, that a prevailing plaintiff in a § 1983 action "should *ordinarily* recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (emphasis added) (quotations omitted). The parties agree that plaintiffs' are entitled to attorneys' fees under the statute, and thus the issue is whether the plaintiffs' requested fees are reasonable.

"[P]laintiffs may receive fees under § 1988 even if they are not victorious on every claim." *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011). In *Fox*, the Supreme Court explains that:

> A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.' *The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief*: Such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.' But the presence of these unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights.

---

[3] Plaintiffs object to the court's order permitting defendants to respond to plaintiffs' itemization of services on the basis that defendants never asked to respond. Dkt. No. 578. Plaintiffs' objection lacks merit. At the hearing and in the opposition brief, defendants' indicated a desire to view and a willingness to respond to plaintiffs' itemization of services. Defendants never had a chance to address the itemization of services in the opposition brief because it was not filed until plaintiffs' reply brief. Defendants' response benefits the court in considering the reasonableness of the proposed lodestar.

ORDER RE ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988
No. C-06-04029 RMW
AG

3

**United States District Court**
For the Northern District of California

131 S. Ct. at 214 (quoting *Hensley*, 461 U.S. at 435 (emphasis added)). In determining whether or not claims are "related" for the purposes of determining attorneys' fees, the court must consider whether the plaintiffs' claims "are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. If so, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.* (quotation omitted).

However, the Court recognized in *Hensley* that in many civil rights cases, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* In such cases, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* Where the facts and legal theories are related, the court's inquiry "should focus on the significance of the *overall relief* obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (emphasis added).

"This circuit requires a district court to calculate an award of attorneys' fees by first calculating the 'lodestar,'" i.e., "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (quotation omitted). "The [lodestar calculation] does not end the inquiry," however. *Hensley*, 461 U.S. at 434. The "results obtained" is an "important factor" that allows the court "to adjust the fee upward or downward." *Id.* The court may also consider the additional factors from *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), in adjusting the lodestar amount, although *Hensley* explains that many of these factors are already subsumed by the lodestar calculation. *Hensley*, 461 U.S. at 434. The most relevant of these additional factors here are: "[t]he amount involved and the results obtained" and "[t]he experience, reputation, and ability of the attorneys." *Johnson*, 488 F.2d at 717-18.

**B.** *Lodestar* **Calculation**

**(1) Reasonable Hourly Rate**

ORDER RE ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988
No. C-06-04029 RMW
AG

4

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir.1987). Plaintiffs submit the following "reasonable" hourly rates:

- $500 for Robert R. Powell
- $500 for Peter Johnson
- $ 300 for Dennis R. Ingols
- $200 for Brett O. Terry
- $125 for Unique Rivera (uncertified "paralegal" of Mr. Powell's office)

Pls.' Mot. 8, Dkt. No. 535-1.

Defendants do not object to plaintiffs' attorneys' proposed hourly rates, except to argue that it is improper to credit the *hours* of Ms. Rivera who is not an attorney or certified paralegal, and where no evidence establishes that her work was legal rather than clerical.

Although Mr. Powell has significantly more experience litigating civil rights actions of this nature than Mr. Johson, *compare* Powell Decl., Dkt. No. 535-3, *with* Johnson Decl., Dkt. No. 535-2, the court concludes that both Mr. Powell and Mr. Johnson's proposed hourly rate is reasonable and "consistent with that charged of attorneys of similar skill and experience practicing in the area of civil rights litigation in the community of lawyers within the Northern District of California." Johnson Decl. ¶ 21. Although the court would generally require the fee requesters to submit *evidence* of the standard market rate for attorneys of similar skill and experience in a civil rights case (plaintiffs submitted only the attorneys' declarations), here, in view of defendants' non-opposition to the plaintiffs' proposed rates, the court concludes that the declarations are sufficient. *See Zoom Elec., Inc. v. Int'l Broth. of Elec. Workers, Local 595*, No. 11-1699, 2013 WL 2297037, at *5 (May 24, 2013) (relying only on attorney's declaration). The court further concludes that the billing rates for Mr. Ingols and Mr. Terry are reasonable based on their respective skill and experience levels and the prevailing rates in the community for the same reasons that they attested to in their unopposed

ORDER RE ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988
No. C-06-04029 RMW
AG

5

declarations.

The court further finds no support for the position that the work of a non-certified paralegal is not properly included in the calculation of reasonable hours billed as long as the work is legal in nature. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("Clearly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar . . . [and] must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client . . . ."). Neither side submitted evidence of the standard prevailing hourly rate in this district for paralegals, law clerks or other administrative assistants. Through independent research, however, the court finds that $125 per hour is substantially less than the hourly rate courts have awarded for paralegal work in the San Francisco Bay area. *See, e.g.*, *Plata v. Schwarzenegger*, No. 01-1351, 2009 WL 2997412, at *2 (Sept. 16, 2009) (finding "uncontested evidence that $169.50 falls below the prevailing market hourly rate for paralegals in the San Francisco Bay area" in *2008*). In the absence of any other proposed amount from defendants for the court to consider, the court finds $125 per hour to be reasonable for an uncertified paralegal (who is pursuing certification). The court will independently consider whether Ms. Rivera's hours were legal or administrative in nature *infra* in determining the reasonable hours worked.

### (2) Reasonable Hours Worked

#### a. Parties' positions

The parties agree that not all of the hours billed in this case are related to the plaintiffs' favorable outcome with respect to officers Hoyt and Blank. Plaintiffs thus submit *estimates* of the hours their attorneys spent with respect to the verdict claims based on billing records that do not, in most instances, clearly designate which billing entries are related to particular defendants in the matter. Attorneys Powell and Johnson each utilize a different methodology to calculate the overall percentage of hours worked reasonably attributable to defendants Hoyt and Blank.

*Powell:* Powell divides his hours billed into two groups: (1) hours billed prior to the court's May 20, 2010 summary judgment order; and (2) hours billed after the court's May 20, 2010

summary judgment order. Powell estimates that, prior to summary judgment, 1/6 of the hours worked by himself, Mr. Ingols, and Ms. Rivera up to and including May 20, 2010 can be attributed to the city defendants. Following summary judgment, Mr. Powell attributed 100 percent of the hours worked by himself, Mr. Ingols, Mr. Terry, and Ms. Rivera, less about twelve hours not related to city defendants (for a total of 116.2 hours), solely to trial and pre-trial work regarding the claims against the city defendants.

*Johnson:* Johnson divides his hours billed into two four groups: (1) hours billed up through the end of 2009 when "all of the work on the Summary Judgment motions . . . was completed," Johnson Decl. ¶ 11; (2) pre-trial hours billed in 2010; (3) trial preparation and trial hours billed in 2011 (first trial); and (4) trial preparation and trial hours billed in 2012 (second trial). According to Johnson, approximately 200 hours (21 percent) of the hours billed from 2006 through the end of 2009 can be attributed to the "verdict claims"; 95 hours (71 percent) of the hours billed in 2010 were attributable directly to the city defendants; 216 hours (100 percent) of the hours billed in 2011 were attributable to the city defendants; and 186.1 (100 percent) of the hours billed in 2012 were attributable directly to officers Hoyt and Blank for the damages retrial. Thus, Johnson asks the court to find that he reasonably worked 511 hours up through the completion of the first trial, and 186.1 hours on the second trial, for a grand total of 697.1 hours.

Defendants argue that the plaintiffs' proposed hours worked are excessive and should be reduced "to document the portion of fees properly attributable to [the city] defendants" and because of the limited success accomplished. Opp'n 9, Dkt. No. 539. In defendants' supplemental response to plaintiffs' itemization of services, defendants ask the court to apportion only 1/10th of the hours billed prior to the filing of the city defendants' motion for summary judgment on October 30, 2009. The defendants further ask the court to reduce the lodestar by 10 percent, which according to defendants, the district court may do without explanation. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2007).

### b. Analysis

Having reviewed the billing records in this case, the court concludes that the plaintiffs'

ORDER RE ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988
No. C-06-04029 RMW
AG

7

attorneys generally apportioned the hours billed that may be attributed to the verdict claims in a fair and reasonable manner. Although Powell's estimate that 1/6 of his hours worked on the matter prior to summary judgment were attributable to the verdict claims may be somewhat high for 2007 through 2008, it is conservative for late 2009 up through May 2010. Mr. Powell's billing records indicate that, after the city defendants' motion for summary judgment was filed in November 2009 up until the court's order on May 20, 2010, Powell's office spent the majority of its hours (at least 78 of around 140 hours from the best the court can glean from the billing record) working on its opposition, preparing for the hearing, and reviewing the court's summary judgment order. *See* Dkt. No. 544-1 at pp. 25-28. The court, therefore, accepts the 1/6 estimate from 2007 through May 20, 2010 as reasonable. The court also accepts Powell's submission that nearly 100 percent of the hours post-summary judgment are attributable to the city defendants (as they were the only parties remaining in the case), less the handful of hours he subtracted as dedicated to the minor's compromise.

Similarly, Mr. Johnson's records reflect a reasonable percentage distribution of the work attributable to the verdict claims on a year to year basis. Having reviewed his billing records, and again taking into account the back-loaded hours at the end of 2009, the court finds no reason to question his apportionment.

Because the plaintiffs do not offer any records establishing that Ms. Rivera's work was legal in nature, the court concludes that it is fair and reasonable to assume that approximately 50 percent of Ms. Rivera's documented hours were legal in nature. Ms. Rivera's declaration states that she performed job duties such as "calendaring" and "filing," but she also states that she prepared pleadings. *See* Rivera Decl., Dkt. No. 536. Accordingly, the court reduces the hours attributable to Ms. Rivera by 50 percent (for a new total of 13.23 hours before summary judgment and 3.45 hours after summary judgment).

Due to some sloppy and vague billing records for both Powell and Johnson, *see e.g.*, Smyth-Mendoza Decl., Ex. 1, ll. 150, 193, 276, 278, 332, 334, 402, 423, 442, 665, 666, 836 and Ex. 2, ll. 7, 8, 10, 11, 102, 393, 413, 583, 680, 695-702, and certain examples of duplicative billing between

ORDER RE ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988
No. C-06-04029 RMW
AG

Powell and Johnson with respect to drafting the various complaints, the court reduces the total lodestar amount for Powell and Johnson by 5 percent. *See Moreno*, 534 F.3d at 1112.

### (3) Calculating the Lodestar

Mr. Powell:

    Before summary judgment: 489.52 hours x (1/6) = 81.58 hours

    After summary judgment: 129.35 hours

    Total hours = 210.93

    210.93 hours x $500/hour = $105,465.00

    Less 5 percent = $105,465.00 x 0.95 **= $100,191.75**

Mr. Ingols:

    Before summary judgment: 28.75 hours x (1/6) = 4.79 hours

    After summary judgment: 8.9 hours

    Total hours = 13.69

    13.69 hours x $300/hour = **$4,107.00**

Ms. Rivera:

    Before summary judgment: 13.23 hours x (1/6) = 2.21

    After summary judgment: 3.45 hours

    Total hours = 5.66

    5.66 hours x $125/hour = **$707.50**

Mr. Terry:

    After summary judgment: 16 hours

    Total hours = 16 hours

    16 hours x $200/hour = **$3,200.00**

Mr. Johson:

    2006-2009: 200 hours

    2010: 95 hours

    2011: 216 hours

    2012: 186.1 hours

    Total hours = 697.1 hours

    697.1 hours x $500/hour = $348,550.00

    Less 5 percent = $348,550.00 x 0.95 = **$331,122.50**

<u>Total lodestar</u>: $100,191.75 (Powell) + $4,107.00 (Ingols) + $707.50 (Rivera) + $3,200.00 (Terry) + $331,122.50 (Johnson) = **$439,328.75**

### (3) Multiplier

Plaintiffs request a multiplier of 2 to their total award to reflect their "true market value" and the extent of their success. Pls.' Mot. 14-15. Once the loadstar is determined, the Supreme Court has stated that an upward adjustment may be permissible "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum v. Stenson*, 465 U.S. 866, 898 (1984). The court concludes that, here, the quality of service rendered is already reflected in the attorneys' hourly billing rate and is not a basis for an upward adjustment. *See id*. at 899. The quality of service was not above that which one could reasonably expect for the hourly rates charged. In fact, plaintiffs' counsel Johnson has been awarded the same rate as more experienced civil rights litigators such as Mr. Powell. Further, Mr. Johnson's conduct during trial lacked the professionalism that should be expected of counsel. For example, he maintained a generally scornful demeanor and objected approximately thirty times to questions asked by the defendants' counsel during the examination of Blank and approximately forty times during the examination of Hoyt. Most of the objections were frivolous. Despite this conduct, the award obtained for the plaintiffs as a whole was substantial and, therefore, the court has not reduced the hourly rate sought.

To the extent the court awarded fees include the time period prior to the County defendants' settlement, the defendants request that the court subtract the $25,000 in attorneys' fees included in

that settlement from the present fee award.[4] The apportioned hours indicated *supra* reflect the hours spent on the verdict claims, and *do not* include attorneys' fees with respect to the work performed on the claims against the County defendants. Thus, the attorneys' fees sought in the plaintiffs' current motion for fees are not duplicative of those previously paid out of the settlement agreement with the County.

## II. ORDER

For the reasons discussed above, the court awards plaintiffs' attorneys' fees in the amount of **$439,328.75**.

DATED: September 20, 2013

RONALD M. WHYTE
United States District Judge

---

[4] The $25,000 attorneys' fee was the minors' share of the attorneys' fees taken with court approval from the $350,000 settlement with the County. A significantly greater share of the $350,000 settlement was used by the parents to pay for their attorneys' fees and costs. *See* Supp. Decl. of Powell (Dkt. No. 418). However, these fees paid by the County do not duplicate the fees requested in plaintiffs' current motion.

ORDER RE ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988
No. C-06-04029 RMW
AG